ERNST ET AL. v. KELLER.

*Descent and distribution—Ancestral title not changed to one by purchase, when—Heirs deed interests to another heir —Deed of grantors described whole tract instead of undivided interests—Grantors not estopped to claim property as ancestral, when — Surviving husband of intestate grantee takes life estate only—Section 8573, General Code.*

1. Where four of five heirs of decedent conveyed part of decedent's realty to the fifth by warranty deed, which purported to convey whole tract and not undivided interests, *held* grantee, who already possessed a one-fifth interest as ancestral property, did not thereafter hold the whole by purchase, as affecting her surviving husband's rights, under Section 8573, General Code.

2. Where four brothers and sisters conveyed part of deceased mother's realty to fifth sister by deed, which described the whole tract rather than the undivided interests of the grantors, *held*, on death of grantee intestate, grantors, by reason of description in deed, were not estopped to claim interest in portion of land which grantee, their sister, held as ancestral property, as against her surviving husband entitled to life estate only, under Section 8573, General Code.

(Decided November 4, 1925.)

ERROR: Court of Appeals for Clermont county.

*Mr. Harry L. Risinger* and *Mr. Hugh R. Gilmore,* for plaintiffs in error.

*Mr. Frank Davis,* for defendant in error.

HAMILTON, J. The action was brought by the surviving husband of Mary Keller to quiet title to cer-

[1] Descent and Distribution, 18 C. J. § 92;  [2] Id., 18 C. J. § 84; Estoppel, 21 C. J. § 42 (Anno.).

tain lands of which his wife died seized. The action is brought against the two brothers of Mary Keller, who claim some interest in the undivided one-fifth of the land in question. While the value of the property is small, the question raised is one of moment, since it relates to the law of real property.

The trial court found in favor of the plaintiff, quieting the title, and the defendants prosecuted error from the judgment entered thereon.

The evidence in the case is submitted under an agreed statement of facts, with a certain warranty deed attached, which is incorporated in the bill of exceptions. The agreed statement of facts is as follows:

"Agreed Statement of Facts.

"This is an action to quiet title; the land in controversy was owned by Kate Ernst; she died intestate in August of 1914; she was also the owner of another tract of land of about 52 acres and some personal property; the land involved in this action she acquired by purchase, the 52 acres she acquired by devise from her deceased husband, Charles Ernst. She left surviving her five children, her sole heirs, Charles E. Ernst, John J. Ernst, William Ernst, Rose Keller, and Mary Keller. On August 10, 1914, these heirs entered into the following agreement:

"'Moscow, Ohio, Aug. 10th, 1914.

"'We the heirs of Mrs. Kate Ernst deceased hereby agree, that the wishes of the said Kate Ernst shall be carried out in full as to the disposition of real estate and chattels. Rose Keller,

Charles E. Ernst, Will F. Ernst, Mary Keller, John J. Ernst.'

"The wishes of Kate Ernst were that Rose Keller having received $1,000, was not to share in the division of real estate. Charles E., William F. and John J. Ernst, were to take the 52-acre tract, and Mary Keller the land in controversy, 'the upper farm,' of about 45 acres; she was to act as administratrix, and if there was any surplus of personal estate, after payment of debts and charges, this was to be divided equally among the five heirs.

"The evidence shows that the land given Mary Keller was, in acreage, less than that given Charles E., William F., and John J. Ernst, but in value it was greater.

"On September 4, 1914, Mary Keller, George Keller, her husband, Rose Keller, and John Keller, her husband, executed and delivered to Charles E. Ernst, William F. Ernst, and John J. Ernst a warranty deed conveying to them the 52 acres, the consideration named in said deed being: 'one dollar and the amicable partition of the estate of Kate Ernst.'

"At that date there was also prepared a warranty deed conveying to Mary Keller the 45 acres; that Charles Ernst refused to sign the deed to his sister, Mary Keller, there being a question as to the use, rents, and profits of the land from the date of the death of his father in 1888 until the death of his mother in 1914; that afterwards the agreement was drawn up by which the heirs waived any claim for rents and profits from the land, and thereupon, at Eaton, the deed to Mary Keller was

signed by Charles E. Ernst and his wife and John J. Ernst and his wife, which is the deed which has been introduced in evidence here.

"Afterward and on the 21st day of January, 1915, however, that deed was duly executed and delivered to Mary Keller by Rose Keller, John Keller, her husband, Charles E. Ernst, Ruby Ernst, his wife, William E. Ernst, Birdie Ernst, his wife, John Ernst, and Carrie Ernst, his wife, the consideration named in the deed being: 'One dollar and other good and valuable considerations and for the purpose of carrying out the wishes of our deceased mother for the division of the lands which she received from our deceased father.'

"Mary Keller was appointed as administrator of the estate of Kate Ernst, and on October 6, 1914, filed her final account, which account was afterwards approved and confirmed by the court; this account shows that she received no assets, that she makes no claim for any compensation and has paid all debts, and that the debts amounted to $343.63.

"The evidence shows that Mary Keller lived with her mother, that after her marriage with plaintiff herein she, with him, continued to live with her mother until her death, that her husband made lasting and valuable improvements on the farm and buildings, and that Mary Keller died intestate, leaving no issue of her body, and that her husband, George Keller, is her sole heir.

"On February 1, 1923, Rose Keller, John Keller, her husband, William F. Ernst, and Ruby Ernst, his wife, executed and delivered to George Keller a quitclaim deed for the land, but Charles E. Ernst

and John J. Ernst refuse to quitclaim and are now asserting that they have an estate or interest in said 45 acres described in the petition herein.

"It is agreed further that the land that came through Mrs. Keller, that Mrs. Keller received the 45 acres, is worth $4,500 or $4,600, and the land that William Ernst et al. received is worth about $3,000; so between those two there is manifestly a difference in acreage and in price—there is that difference between them showing that neither in acreage or in price have they been equal."

It will be noted that Mary Keller died intestate and without issue. It is conceded that four-fifths of the land in question was not ancestral, and passed in fee to the surviving husband, the plaintiff in this case. It is contended by the defendants, plaintiffs in error here, that the undivided one-fifth of the land in question was ancestral, and that they, as brothers of the deceased and next of kin, inherited an interest in the undivided one-fifth.

Defendant in error, plaintiff below, raises two questions, which he contends bar the claim of the two brothers to an interest in the land:

(1) That in carrying out the wishes of their deceased mother all of the brothers and sisters of Mary Keller joined in a warranty deed conveying to Mary Keller the land in question; that that warranty deed described all of the land, and not the undivided interests. It is urged that this warranty deed changed the character of the title from ancestral to a title by purchase.

The other point made by the plaintiff below is that, by reason of their executing the warranty deed for the whole tract, the defendants, the two brothers, are estopped to set up a claim to any interest in

the undivided one-fifth, under the theory that they conveyed all of the property by the warranty deed, and that if they afterwards acquired title that title would inure to the benefit of their grantee under the deed, and they would be estopped to set up any claim.

We are of opinion that the first point is not well taken. Mary Keller already held an undivided interest in the property in question by inheritance from her ancestor, her mother. Her title to the undivided one-fifth interest was perfect as ancestral property. While it is true the warranty deed to her from her brothers and sisters described the whole tract, they could only convey what they had. In the case of *Lessee* v. *Swearingen,* 1 Ohio, 395, in the opinion, the court says, at page 411:

"It is a general rule that the heir shall not take by purchase when he may take the same estate in the land by descent."

Further, this view is supported by the case of *Huseman* v. *Fingermeyer,* 106 Ohio St., 113, 139 N. E., 862. In that case five coparceners entered into an amicable partition of land descended from a common ancestor. The land was surveyed and divided into tracts of equal area, but of unequal value. By arrangement of the heirs, each of them could bid for a farmhouse or homestead located upon one of the tracts, and the highest bidder was to have a quitclaim deed therefor from the other heirs. After competitive bidding, one coparcener made a certain bid for the homestead, and received from the others a quitclaim deed therefor. This sum was equally distributed among the several coparceners. Mutual releases were executed for the other four tracts taken by the other heirs. The court held that to the

extent of one-fifth of the tract selected by the deceased wife she took title by descent, which on her dying intestate, passed under Section 8573, General Code.

It is true that in the *Huseman case* there was an amicable partition and quitclaim deeds were made to her of the whole tract, but the court held as it did upon the theory, no doubt, that her one-fifth interest, coming by descent, was superior to any conveyance by deed. That principle applies here. Mary Keller was the owner by descent of the undivided one-fifth. Her brothers and sisters could convey no more than they had, which was the other four-fifths. They could not enlarge or add to the perfect title which she held by descent from her mother.

The only question therefore is, Are the defendant brothers estopped from claiming as next of kin of their deceased intestate sister, Mary Keller? Defendant in error argues in the brief that the rule of estoppel to assert an after-acquired title operates in this case to bar the claim of the plaintiffs in error. The general rule is that if a grantor having no title, a defective title, or an estate less than that which he assumes to grant, conveys with warranty or covenants of like import, and subsequently acquires the title or estate which he purported to convey, or perfects his title, such after-acquired or perfected title will inure to the grantee or to his benefit by way of estoppel. Do the facts here bring the case within this rule? This has necessitated an extended examination of the authorities on the question. We have not been able to find where this exact question has arisen in Ohio.

In *Clements* v. *Faulk & Co.*, 181 Ala., 219, 61 So.,

264, it is held that a conveyance of a tenant in common's undivided interest, with covenants of warranty, did not pass the interest subsequently acquired as heir to one of the other tenants in common who thereafter died. In *Gilbert* v. *James,* 86 N. C., 244, the court held that a deed conveys no more than the grantor had on the date thereof, where it conveys the estate which the grantor has or may hereafter have as heir to an ancestor, even though he subsequently acquires a deceased brother's share. In *Wright* v. *Wright,* 99 Ga., 324, 25 S. E., 673, it is held that a conveyance of "all my interest and title that I have or may have" in certain land shall not pass an interest subsequently inherited by the grantor.

It will be seen that where the question has arisen directly, the courts have held contrary to the claim of the defendant in error. Mary Keller, as we have found, was seized of an undivided one-fifth of the property in question by descent. The warranty deed did nothing more than perfect the title to the whole tract in her. She was the owner of four-fifths by purchase and one-fifth by descent. She could alienate or will a perfect title. Having died intestate,. and without issue, the statutes of Ohio (Section 8573, General Code) cast a life estate in the undivided one-fifth upon her surviving husband. Can it be said that under these circumstances the two brothers forfeited their rights in the property under the statute of descent? If, by their act, they had conveyed a defective title, or no title, to the sister, and afterward came into possession of a title which corrected or perfected the title which they undertook to convey, the plaintiffs in error would be estopped. But nothing of that kind is in

this case. As heretofore stated, they but conveyed their interest and perfected an indefeasible fee-simple title in their sister. What they did was in no wise inconsistent with their rights under the statutes.

In 25 L. R. A. (N. S.), in the notes on page 129, we find this rule:

"The rule that any title to the property afterwards acquired by a grantor in a warranty deed inures to the benefit of his grantee is applicable only to titles existing and outstanding at the time of the deed, and does not extend to titles subsequently originating, either by the grantee's acts or by his laches; and the cases very uniformly hold that a grantor may, by adverse possession subsequently initiated, acquire a title to the premises, even against the grantee or his privies."

In support of this rule, a long line of cases from many of the states is found. If adverse possession could be initiated, and it is so held, certainly the right of succession under the statutes would be good as against the claim of estoppel.

Our conclusion is that the plaintiffs in error are not estopped to claim an interest in the undivided one-fifth of the real estate in question, as heirs and next of kin of their deceased sister, but are tenants in common of the property, subject to the life estate of George Keller.

The judgment of the court of common pleas will be reversed and the cause remanded, with instructions to dismiss the petition.

*Judgment reversed and cause remanded.*

BUCHWALTER, P. J., and CUSHING, J., concur.