JOURNAL ENTRY AND OPINION
This is an appeal from an order of Juvenile Court Judge Joseph Russo that approved the decision of Magistrate Mark Majer and granted legal custody of three-year-old M.M. to his maternal aunt. Appellant, M.M.'s mother, claims the judge erred in overruling her objections and adopting a magistrate's decision, since M.M.'s guardian ad litem ("GAL") recommended reuniting the child with her under the protective supervision of the Cuyahoga County Department of Child and Family Services ("CCDCFS"). She also claims the judgment cannot stand because R.C. 2151.42
is unconstitutional, she showed her ability to take custody under CCDCFS's protective supervision, and M.M.'s putative father was not properly notified of the proceedings. We affirm.
M.M. was born in August 1998 with several major health problems and, upon his release from the hospital, was placed in Cleveland's Providence House because his mother was homeless and unable to take care of him. On October 4, 1998, the mother had the child released to the custody of Mr. Mrs. B. CCDCFS then moved for temporary custody under R.C. 2151.353
alleging that the child was abused, neglected or dependent, which was granted on December 8, 1998, and apparently went into effect immediately, although it was not approved by the judge until April 13, 1999. Because CCDCFS found that Mr. Mrs. B. provided M.M. with a "safe and stable environment[,]" they retained physical custody.
A case plan was instituted to enable the mother to gain custody of her child, and included requirements that she: undergo alcohol treatment; quit her job as a bar manager and find a job that did not entail serving alcohol; find suitable living space; and establish a bond with her son through frequent visitation. Although she moved to Richland County in February 1999, CCDCFS social worker Charlotte Johnson reported that the mother was making apparent progress in addressing her alcoholism, and suggested that the child be moved to his maternal aunt's home, a "less restrictive" setting, to allow the mother a greater opportunity for time with him and to establish the mother-child bond. M.M. was gradually moved to his aunt's home in the Cleveland area. The mother was encouraged to make more frequent visits and to stay overnights or on weekends. The aunt converted her basement into a residence for the mother and she was even encouraged to move into the home in order to spend as much time as possible with her son.
On October 7, 1999, CCDCFS moved, under R.C. 2151.415(A)(3), to modify the temporary custody order and grant legal custody of the child to his aunt. After a number of continuances, an evidentiary hearing was held on May 30, 2000. Johnson testified that the mother had failed to take advantage of opportunities to visit her son, establish a bond with him, or to become involved in his extensive health care issues by attending his doctor's appointments or contacting them to learn about his condition, treatment, and his necessary care.
Johnson also testified she had difficulty in personally verifying the mother's progress in addressing her alcoholism or in finding suitable employment and living space because of her residence in Richland County but, instead, received only reports and documentation from Mansfield officials.
The GAL reports of January 31, 2000, and April 10, 2000 recommended that M.M. remain in his aunt's care, primarily because his mother had failed to make many scheduled visits, those she had made were often short, and she was not taking advantage of the "easy access" to her son in order to establish a relationship with him. The GAL stated that, according to the aunt's records, the mother visited M.M. only nine times between May 14, 1999, and December 30, 1999, with three of those visits less than thirty minutes, and the total time less than twenty-four hours. Although the visits increased to three times a month in February 2000 and March 2000, the GAL believed that she increased her visits only because she feared losing legal custody to her sister, and this was insufficient to make up for the important time lost in the first eighteen months of the child's life. The GAL was also concerned that she attended only one "early intervention" session, which is a program designed to aid parents in caring for children with M.M.'s health problems. Both GAL reports concluded that the aunt should be granted legal custody because the mother had failed to make her child "a priority in her life."
Although the transcript of the May 30, 2000 proceeding is incomplete, a journal entry indicated that the hearing was continued for three months in order to provide the mother with an opportunity to "demonstrate a commitment" to her son. Apparently the mother had moved to Lakewood about a month prior to that hearing, allowing CCDCFS to observe her compliance with the case plan firsthand, and any distance impediment to her visitation with her son was removed.
After several continuances, a hearing was held on January 23, 2001, during which the GAL submitted a new report that recommended denial of the motion to grant the aunt legal custody, and to allow the mother to take custody of M.M. under the protective supervision of CCDCFS. The GAL's recommendation was based upon the mother's conduct since May 30, 2000; the mother had attended parenting classes, was employed, and was attending alcoholism support groups, despite a report that Johnson found alcohol in her home during an unannounced visit. The GAL noted that the mother had visited her son three nights a week since September 18, 2000, and considered this an important show of persistence and commitment, although the report conceded that she was often late and sometimes left early from the two-hour visits, and had continued to absent herself from early intervention sessions and doctor's appointments.
The GAL also believed that the mother was aware of her son's need for a smoke-free environment because of his respiratory difficulties and allergies. She understood not only that she could not smoke inside the house, but that she must also change her clothing after smoking, because of M.M.'s adverse reactions.
Johnson, however, did not share the GAL's view. Although the mother's urine tests were negative for alcohol and she was attending support groups, Johnson suspected that the home was not alcohol-free after her unannounced visit, and questioned the mother's commitment to providing a smoke-free environment for her son. She remained concerned that the mother was visiting her child for only the minimum number of visits set forth in her case plan, that she was late for many of those visits, was not attempting to have more frequent contact with him, and still failed to participate in his health care needs. While the mother protested that she was discouraged or prevented from participating in M.M.'s medical treatment, the record gives no indication that she ever complained about this to CCDCFS, Johnson, or the juvenile court. In addition, Johnson testified that "protective supervision" ordinarily entailed only once-monthly visits from a CCDCFS caseworker.
On March 30, 2001, the magistrate's decision granted legal custody to the aunt, ordered the mother to continue with chemical abuse assessment, and to submit to monthly urine tests pending a review of the case in twelve months. Apparently the parties were not notified of the decision immediately because it was not filed or journalized until April 17, 2001, after the judge had already approved it. The mother's objection to the decision, that the magistrate erred in failing to follow the GAL's recommendation that she be granted custody under CCDCFS's protective supervision, was overruled, and the judge adhered to his approval of the decision in its entirety on June 14, 2001.
Her first assignment of error states:
 I. SECTION 2151.42 OF THE OHIO REVISED CODE, AS AMENDED, EFFECTIVE OCTOBER 29, 1999, IS UNCONSTITUTIONAL ON ITS FACE AND AS APPLIED TO APPELLANT, SINCE THE STATUTE PROVIDES FOR THE VIRTUAL TERMINATION OF HER ABILITY TO EVER REGAIN CUSTODY OF HER CHILD, WHICH IS A FUNDAMENTAL LIBERTY INTEREST — VESTED IN THE CHILD AND
THE PARENT — DERIVED FROM THE SUBSTANTIVE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT, AND YET FAILS TO PROVIDE THE STRICT PROCEDURAL PROTECTIONS AFFORDED A PARENTAL RIGHTS TERMINATION PROCEEDING. (EMPHASIS SIC).
The mother challenges R.C. 2151.42 on the basis that it permits a grant of permanent legal custody to another person without the due process protections of a permanent custody proceeding, which, among other things, requires a determination by clear and convincing evidence that the affected child cannot be placed with either parent within a reasonable time.[1] Instead, a grant of legal custody, which does not divest the non-custodial parent of "residual" parental rights,[2] is subject to a more general standard of R.C. 2151.415(B), which allows the judge to grant a motion to modify custody "in accordance with the best interest of the child as supported by the evidence * * *."
R.C. 2151.42(B) states:
 An order of disposition issued under * * * division (A)(3) of section 2151.415 * * * of the Revised Code granting legal custody of a child to a person is intended to be permanent in nature. A court shall not modify or terminate an order granting legal custody of a child unless it finds, based on facts that have arisen since the order was issued or that were unknown to the court at that time, that a change has occurred in the circumstances of the child or the person who was granted legal custody, and that modification or termination of the order is necessary to serve the best interest of the child.
The mother contends that this section effectively terminates her parental rights, and thus the protections of R.C. 2151.414 should apply before her sister is granted legal custody.[3]
The mother concedes that she failed to challenge the constitutionality of R.C. 2151.42 at any point before raising it here and that, ordinarily, the failure to preserve the issue constitutes waiver.[4]
She argues, however, that we should ignore the waiver and review the issue, because she was unaware of the import of R.C. 2151.42 upon the proceedings, and the judge did not notify her that a grant of legal custody was intended to be permanent. We disagree.
Although we have discretion to ignore a waiver in appropriate cases, we should exercise that discretion only "in specific cases of plain error or where the rights and interests involved may warrant it."[5] The claimed error is not plain, and review of this issue would benefit from a record designed to fully argue its legal merits as well as bring forth any factual matter specifically relevant to the application of R.C. 2151.42
in a specific case. We do not find the argument or the record conducive to review of the constitutional challenge. Moreover, the judgment, which required the mother to undergo further chemical dependency assessment and monthly urine tests pending a yearly review, suggests that we withhold our review of the issue pending the judge's interpretation and application of the section. We find, therefore, that this constitutional issue was waived and decline to address it. The first assignment of error is overruled.
The second assignment states:
 II. THE JUVENILE COURT'S DECISION TO AWARD LEGAL CUSTODY TO A NON-PARENT, OVER THE RECOMMENDATION OF THE GUARDIAN AD LITEM, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW, SINCE MOTHER SUBSTANTIALLY COMPLIED WITH THE TERMS OF THE CASE PLAN AND THE STATUTORY OBLIGATION AFTER COMMITTING THE CHILD TO THE TEMPORARY CUSTODY OF CFS WAS TO REUNIFY THE FAMILY, NOT CREATE ANOTHER FAMILY.
In civil cases, we review a manifest weight challenge to determine whether some competent, credible evidence supports the judgment.[6] The criminal standard, while stated in more detail and arguably requiring a more searching review, also focuses on the credibility of evidence, allowing a judge or reviewing court to consider not only the sufficiency of evidence, but the quality of evidence introduced.[7] While a juvenile custody proceeding is not criminal matter, it is consistently recognized as implicating important rights deserving of more scrutiny than the ordinary civil proceeding.[8] Therefore, to the extent the civil manifest-weight review is less demanding than that in criminal matters, in juvenile proceedings such review should more closely approximate the criminal standard.
In addition to the manifest-weight standard, however, we must also recognize the traditional deference afforded to juvenile custody determinations, and our duty to uphold such determinations absent an abuse of discretion.[9] Although one might make the facile observation that a judge abuses his discretion when his custody determination is against the manifest weight of the evidence, an abuse of discretion in this context is generally considered to require a decision that can be characterized as unreasonable or arbitrary.[10] Therefore, we must be thoroughly convinced that a judge's custody determination is against the manifest weight of the evidence before reversing on that ground.[11]
The evidence showed that the mother made progress in addressing her alcohol problem, but there was also evidence of lingering doubts concerning her alcohol use. Moreover, while her conduct since the May 30, 2000 hearing showed an increased frequency of visits, the length of her visits with her son remained short, and she noticeably failed to involve herself with his medical care, a fact indicating not only a lack of commitment, but also indicating she might lack the ability to care for a son with a serious respiratory condition and other chronic medical needs.
Although the mother's conduct since the May 30, 2000 hearing demonstrated a greater commitment to M.M. than that previously shown, her efforts were not heroic and, despite statements that she completed her case plan, she in fact failed to complete essential parts of it, such as contacting her son's doctor, attending his medical appointments, and attending early intervention classes to learn how to properly care for him. Despite her claims that she was denied the opportunity to establish a relationship with her son, the mother did not voice such complaints at the time the obstacles were allegedly raised. The judge granted her an opportunity to demonstrate a commitment to her son, and she was encouraged and expected to go beyond the minimum requirements set forth in her case plan in order to show her sincerity. It appears the judge also was concerned that the frequency of CCDCFS visitation under protective supervision was insufficient to justify the risk of placing M.M. with his mother, whose commitment and ability to care for him were not definitely established. We do not find the judge erred in finding that the mother failed to demonstrate the commitment sought, and in granting her sister legal custody because that arrangement was in M.M.'s best interest. The second assignment of error is overruled.
The third assignment states:
 III. THE JUVENILE COURT ERRED IN AWARDING LEGAL CUSTODY TO A NON-PARENT WHEN SERVICE HAS NOT BEEN PROPERLY ATTEMPTED OR MADE ON THE CHILD'S ALLEGED FATHER.
The mother submits that her son's putative father, T.S., was not properly served with notice of the proceedings, because the service by publication used to notify him was not properly justified, and no attempt was made to notify him of later proceedings. We need not decide whether service upon T.S. was necessary or effective, however, because the mother has no standing to object. Her claim is not that the judge lacked subject matter jurisdiction over her case, but that he lacked personal jurisdiction over M.M.'s father and, because she is prejudiced by it, she has standing to assert this error, citing In re Smith.[12] We agree that whether M.M's father was properly served raises an issue of personal, rather than subject matter, jurisdiction, and that ordinarily such an issue would be, in fact, personal to him, and the mother could not raise it.[13] In permanent custody proceedings, however, this court has held that the failure of service on one parent satisfies the Smith
standard of transferable error, because R.C. 2151.414 requires the judge to determine that the child cannot be placed with either parent before divesting even one of them of parental rights.[14] The prejudice exception, however, does not elevate the question of personal jurisdiction to that of subject matter jurisdiction — it only allows the appearing parent to object or assign error on an issue that he normally would not have standing to raise. If the mother was not prejudiced by the claimed error, then she has no standing to assert it.
Although CCDCFS has not raised the issue, the record does not show that the mother objected to the absence of her child's father or the manner of serving him, and she has not claimed that she did so or pointed to the objection in the record. The issue of personal jurisdiction is waived without timely objection, and we see no reason why this doctrine should not apply to one asserting prejudice as a result of the defect, as well as to the person purportedly served. There is no indication that the mother objected to the father's absence at any time throughout the lengthy proceedings before the judge, and we cannot construe this as anything but a waiver of that objection.
Even if she could show that she timely objected to the lack of service on the father, we are not persuaded that his absence prejudiced her rights. As already noted, service upon both parents is necessary in permanent custody proceedings because neither parent's rights can be terminated unless the judge finds that the child cannot be placed witheither.[15] R.C. 2151.415(B), however, does not require this determination, but only a showing that legal custody is in the best interest of the child.
The judge found that granting M.M.'s aunt legal custody was preferable to granting the mother custody under protective supervision, and the father's presence would not affect that determination. If service on him was defective, an issue upon which we express no opinion, the legal custody order would be invalid as to him only, and he could assert his own case. The third assignment of error is overruled.
Judgment affirmed.
It is ordered that the appellee recover from appellant costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and COLLEEN CONWAY COONEY, J., CONCUR.
[1] R.C. 2151.353(A)(4), 2151.414(B)(1)(a).
[2] R.C. 2151.011(B)(17), 2151.011(B)(41); In re Hitchcock (1996),120 Ohio App.3d 88, 101, 696 N.E.2d 1090, 1098.
[3] The mother has stated her argument solely as a matter of constitutional law, and has not argued that R.C. 2151.415(B), which states that "all orders for permanent custody shall be made in accordance with sections 2151.413 * * * and 2151.414" should be interpreted to require the protections sought. As with the constitutional argument, we consider this issue waived and inappropriate for review on this record.
[4] In re M.D. (1988), 37 Ohio St.3d 149, 150, 527 N.E.2d 286,287.
[5] Id. at 151, 527 N.E.2d at 288.
[6] C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.
[7] State v. Thompkins (1997), 78 Ohio St.3d 380, 386-387,678 N.E.2d 541, 546-547; State v. Martin (1983), 20 Ohio App. 172, 175, 20 OBR 415, 485 N.E.2d 717, 720-721.
[8] See, e.g., In re Heston (1998), 129 Ohio App.3d 825, 827,719 N.E.2d 93, 95 (right to effective assistance of counsel).
[9] In re Benavides (May 3, 2001), Cuyahoga App. No. 78204, unreported.
[10] Id., citing Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219, 5 OBR 481, 450 N.E.2d 1140, 1142.
[11] Benavides, supra.
[12] (1991), 77 Ohio App.3d 1, 13, 601 N.E.2d 45, 52-53.
[13] See, e.g., In re Miller (1986), 33 Ohio App.3d 224, 225-227,515 N.E.2d 635, 638-639 (juvenile court had no subject matter jurisdiction over probate guardianship proceedings, while failure of service is an issue of personal jurisdiction assessed with respect to individual parties).
[14] In re Jones (Nov. 22, 2000), Cuyahoga App. No. 76533, unreported.
[15] In re Jones, supra.