JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal from a conviction and sentence entered by Judge Kathleen A. Sutula after a jury found Steven Crotts guilty of one count of kidnapping[1] and two counts of gross sexual imposition,[2]
all concerning a male victim under the age of thirteen. Crotts claims, inter alia, that the charges against him failed to ensure juror unanimity on the facts that constituted the kidnapping and that it was error to admit other "acts" evidence in order to prove his character. We reverse and remand.
 {¶ 2} From the record we glean the following: On January 16, 1999, then thirty-eight year old Crotts was arrested after police investigated an alleged sexual assault at his home on Lee Road in Maple Heights. The twelve year old victim alleged that he had stayed overnight at the house and awakened to find Crotts molesting him. The victim's twin brother had also stayed overnight and their older brother P., then sixteen years old, was present when the police arrived because he was employed by Crotts and lived there.
 {¶ 3} At trial the victim testified that he and his twin brother had attended an "Awana"[3] church event with Crotts on the night of January 15, 1999, later rented videos, went to Crotts's home and watched the videos while eating dinner and that the victim fell asleep early after Crotts gave him a melatonin tablet. He testified that he woke briefly when he became aware that he was being carried upstairs, but fell back to sleep until morning when he awoke in Crotts's bed. He stated that he was naked and lying on top of Crotts, who was also naked, that Crotts was "humping" him, and that he felt a "wetness" on his body. The boy stated that he tried to get away but Crotts grabbed his wrist and continued. He escaped Crotts's grasp and ran downstairs, where he awakened his twin brother and called the police.
 {¶ 4} In addition to police investigators and an expert medical witness, three of the victim's brothers also testified; the victim's twin and P., who were in Crotts's house at the time of the incident, and A., another brother employed by Crotts for jobs around his house or in his businesses as a hot dog vendor at fairs and school portrait photographer.
 {¶ 5} Crotts testified that on the morning of January 16th the victim woke him up by throwing shoes at him, and then began pouring olive oil on him and spilling it on the carpet. He stated that he grabbed the child, took the oil away from him, and threatened, if he didn't behave, to "beat you like your father does." He claimed that the boy ran downstairs and threatened to sue him. A police officer testified that Crotts told him that the child's story was a "ploy * * * to get money from him."
 {¶ 6} The jury found Crotts guilty of kidnapping with a sexual motivation specification and two counts of gross sexual imposition, and he was sentenced to five years each on the counts of gross sexual imposition, concurrent with each other but consecutive to an eight year prison term for kidnapping. The judge also determined that Crotts was a sexual predator.[4]
 I {¶ 7} Crotts's first and fifth assignments of error raise the same issue and can be addressed together. In his first assignment he claims that his kidnapping conviction is invalid because the jury was not required to reach a unanimous verdict on the facts that constituted the kidnapping, and in his fifth assignment he argues he received ineffective assistance of counsel because his lawyers failed to raise the issue. We review an ineffective assistance claim to determine whether the lawyer's conduct was within professional standards and whether there is a reasonable likelihood that the outcome would have been different absent the error.[5]
 {¶ 8} Crotts claims the kidnapping conviction cannot stand because the State argued alternatively that the kidnapping occurred: (a) when he carried the victim upstairs; or (b) when he grabbed the victim's wrist to prevent him from escaping. He argues that the jury should have been required to reach a unanimous verdict upon the facts that constituted the kidnapping, and the verdict is not unanimous because there is a chance that some jurors found him guilty for carrying the child upstairs while others found him guilty for grabbing his wrist.
 {¶ 9} While a jury must reach a unanimous verdict upon each element that makes up a crime, it "need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element[.]"[6] Where an element can be accomplished by alternative means, the jurors need not agree on which means the defendant used so long as they agree that the element is satisfied.[7] Crotts was charged with kidnapping under R.C. 2905.01(A)(4), which states:
 {¶ 10} "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 11} "* * *
 {¶ 12} "(4) To engage in sexual activity, as defined in section2907.01 of the Revised Code, with the victim against the victim's will[.]"
 {¶ 13} Pursuant to Richardson, we must construe the statute to determine whether the jury chose between alternative means of completing the same element or between separate elements. The first element of kidnapping expressly appears to state a number of means to complete the same offense, as the defendant can use force, threat, deception or, in the case of a victim under age thirteen, "any means" to remove or restrain the victim. The second set of alternatives is at issue here, however, as the jury was allowed to convict either on evidence that Crotts "removed" the victim when he carried him upstairs or on evidence that he "restrained" the victim when he grabbed him by the wrist. We must determine whether these alternatives constitute different means of committing the same offense or are elements of separate offenses.
 {¶ 14} Although the Supreme Court's decisions in Richardson andSchad v. Arizona[8] indicate some continuing controversy in this area, we believe the determination between "means" and "elements" should be at least consistent with the methods of determining whether two offenses are included or allied for purposes of the charge or punishment. These determinations each require analysis of abstract elements[9] to decide whether an offense is included in the charging instrument or whether the legislature authorized multiple punishments for two offenses that arise from the same set of facts. If one determines that a defendant faces multiple punishments for two offenses because they contain separate elements, that same determination should apply when deciding whether the methods of committing an offense constitute separate elements or are merely means of committing a single element. For example, if the offense of abduction is not allied with kidnapping because abduction cannot be committed by deception,[10] then one must conclude that the methods of force, threat, or deception do not constitute separate means of the same element, but are separate elements that must be specified in a charging instrument or bill of particulars and upon which a jury must unanimously agree.
 {¶ 15} The difficulty with the current state of allied offense analysis is that it too often fails to distinguish between alternative means and separate elements, and instead treats every alternative as a separate element regardless of its character. Because of this approach very few statutory offenses can be viewed as allied and multiple punishments are favored.[11] If each alternative is considered a separate element, however, very few offenses can be considered included for purposes of charging instruments or jury instructions, and consistency would demand that the alternatives be considered separate elements for purposes of jury unanimity as well. The existence of a particular fact should not be considered an "element" for one purpose and a "means" for another, because it would be unfair to allow multiple punishments for offenses containing "elements" that are not required to be specified in an indictment or separately considered by a jury.[12]
 {¶ 16} When viewed in light of the consequences for other determinations, we conclude that removal and restraint are separate means of completing a single element of a kidnapping, that element being a restriction of the victim's freedom. Removal to another location is, in fact, simply a variant on the restraint of liberty. Determining otherwise would allow the State to charge and punish Crotts with two counts of kidnapping based upon the separate acts of removal and restraint claimed here, even though both acts are associated with a single alleged purpose.
 {¶ 17} Our decision here is consistent with the decision in Whalenv. United States,[13] in which the United States Supreme Court determined that multiple punishment analysis should consider the existence of statutory alternatives.[14] While this decision conflicts with the analysis used in Rance and Richey, supra, Whalen and Richardson
provide a framework for consistent application of these principles that satisfies constitutional standards of due process and double jeopardy.[15] Therefore, the jury was required to find unanimously on the element of restraint, but it did not need to find unanimously on whether the restraint was accomplished by carrying the victim upstairs or grabbing his wrist when he tried to escape. The first and fifth assignments are overruled.
 II {¶ 18} In his second assignment Crotts claims the kidnapping conviction is invalid because the evidence was insufficient to sustain the element of restraint. We address the sufficiency of the evidence to determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[16] A sufficiency challenge presents a question of law and does not allow the reviewing court to weigh the evidence.[17]
 {¶ 19} Crotts argues that the failure to require jury unanimity means his conviction must be reversed because the evidence was insufficient to satisfy either of the alternative means. Although we note that in these circumstances there is a question whether a sufficiency challenge can prevail if the evidence fails to establish one of the alternative means, we need not answer it here. The victim testified that he was carried upstairs, that he awoke in Crotts's bedroom, and that Crotts restrained him by grabbing his wrist when he tried to escape the bedroom. This testimony, if believed by the jury, is sufficient in itself to satisfy either means of completing the restraint element. As noted, witness credibility is an issue going to the weight of evidence, not its sufficiency.[18] The second assignment is overruled.
 III {¶ 20} The third assignment challenges "other acts" evidence admitted during trial under Evid.R. 404(B). Although the judge bifurcated the trial to exclude evidence that concerned a separate incident with another alleged victim and sustained a number of objections to evidence of other acts, she allowed the State to present evidence that suggested Crotts was homosexual and had an attraction to minor boys. Over objections, the judge: (1) allowed the victim to testify that he saw pictures of "naked boys" and "nude people" while playing with Crotts's computer; (2) allowed the victim's twin to testify that they attended the Awana group at an "all gay church"; (3) allowed the twin to testify to an incident in which Crotts allowed and participated in wrestling matches at his home;[19] (4) allowed P. to testify that Crotts went to another church or temple that was rented to the "gay community"; (5) allowed the introduction of two photographs found in Crotts's home, one of P. and his friend, "C.", fully clothed but bearing the caption "Sisters for Life," and one of C. unclothed but with a sheet that covered his genitals and part of his torso and bore the caption, "C'mon `n' Lick Me!"; and (6) allowed P. to testify that "I have had personal experiences with the defendant that would make me believe he's guilty[.]"[20]
 {¶ 21} Evid.R. 404(A) states that, with certain exceptions not applicable here, "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion[.]" Evid.R. 404(B) prohibits evidence of specific acts if offered for the same purpose, but allows such evidence if offered for another purpose, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." While we review the judge's rulings for abuse of discretion,[21] that discretion is subject to the strict construction of Evid.R. 404 against admitting character evidence.[22]
Moreover, while discretion exists to weigh evidence and interpret facts, a judge has no discretion to make an error of law.[23]
 {¶ 22} Although the judge did not explain the rationale for all her rulings, she ruled that some of the evidence was admissible because the sexual motivation specification and the gross sexual imposition charges each contained an element of "sexual gratification," based on the definitions of "sexual contact" in R.C. 2907.01(B) and "sexual motivation" in R.C. 2971.01(J). Therefore, she stated that she would admit evidence "in order to satisfy the element of showing what types of things gratify this particular defendant in a sexual fashion." The State argues that the evidence was admissible for a number of purposes, including to show Crotts's sexual motive or intent, lack of mistake, and plan.
 {¶ 23} Evidence of other acts is admissible if relevant for these purposes, which means not only that the other acts must be probative of motive, intent, lack of mistake, or plan, but that the claimed purposes must themselves be in dispute.[24] Therefore, we can immediately dispose of the State's "lack of mistake" argument because Crotts did not raise such a defense. A mistake argument admits claimed acts but denies the existence of mens rea or claims mitigation.[25] Although the State argues that other acts evidence was relevant to show Crotts's intent at the time he carried the victim upstairs and engaged in sexual contact with him, Crotts denied the acts, not their alleged purpose. Even though the prosecution cross-examined Crotts concerning whether any of his acts could have been mistaken for sexual advances, this is not the equivalent of a defendant raising the defense himself.[26]
 {¶ 24} Even if the prosecution could manufacture an issue in dispute by claiming that it must prove all elements of the offense,[27]
analysis of evidence under Evid.R. 404 is not complete until the judge balances its probative value against its unfairly prejudicial effect.[28]
Judges must be careful to ensure that claimed purposes under Evid.R. 404(B) are indeed relevant and not merely a mask to allow the evidence to be used for its improper purpose.[29] Despite the State's burden to prove all elements, certain elements become the focus of dispute based on the facts of any particular case. If the State could prove the acts occurred as alleged, Crotts's intent would not be in dispute. Regardless of whether the State could inject some marginal issue of intent, the evidence was far more dangerous as proof of the acts themselves than as proof of mens rea. Because there was no significant claim of mistake, the evidence was irrelevant to show the absence of mistake.[30]
 {¶ 25} The principles just expressed in analyzing the mistake issue are also relevant to understanding the remaining issues under Evid.R. 404(B). Because the absence of mistake ultimately implicates the issue of intent, the fact that intent was not a subject of real dispute also renders illegitimate any claim that Crotts's motive or intent to engage in the acts for a sexual purpose was genuinely at issue. Under the circumstances here, there would be no genuine dispute of intent if the State could prove the acts occurred as alleged. However, the State's arguments on the issue of motive or intent illustrate another dangerous misconception about the admissibility of other acts evidence. By arguing that Crotts's other acts were admissible to show his motive or intent in committing the acts charged here, the State is proposing an exception that would swallow the general rule that other acts are inadmissible to show the defendant's propensity to commit the acts alleged.
 {¶ 26} The State's argument and the judge's ruling essentially admit other acts evidence to show a defendant's motive or intent without recognizing that the inference of motive or intent can only be drawn after one draws the inference of propensity.[31] In effect, the other acts evidence is used to show the defendant's propensity, and the inference of propensity is then used to infer motive or intent. This is exactly the type of purpose for which the evidence should be excluded, not admitted.
 {¶ 27} Evid.R. 404(B) prohibits evidence of other acts when used to show that the defendant "acted in conformity therewith." To be admissible under the exceptions to this rule, the evidence must be relevant for some other purpose. When the other purpose cannot be inferred without first inferring that the defendant acted in conformity with a character trait or propensity, the inescapable conclusion is that the evidence is being offered for the prohibited purpose. Evidence is admissible under Evid.R. 404(B) only if it is relevant for an admissible purpose, and only if that purpose can be inferred without first inferring the defendant's propensity.[32]
 {¶ 28} As already stated, a rule allowing intent or motive to be shown through an inference of propensity would render Evid.R. 404(B) irrelevant because all other acts would be admissible. "Propensity" is defined as "an intense and often urgent natural inclination"[33], while "motive" is defined as "something (as a need or desire) that causes a person to act."[34] The confluence of these definitions requires judges to pay particular attention to issues under Evid.R. 404 to ensure that evidence is not offered for a prohibited purpose. In legal terms, motive and intent are "situationally specific"[35] mental states, and evidence of a general propensity is not permitted to show the existence of those states.
 {¶ 29} When analyzing evidence under Evid.R. 404(B), one also should recognize that the exceptions admit other acts evidence for two primary purposes; to show intent or identity.[36] Therefore, the State's argument that the other acts were admissible to show a plan or scheme must be relevant to one of these purposes, and not as proof that Crotts committed the charged acts themselves. Again, because Crotts's intent would be shown by proof of the acts themselves, other evidence of his intent would be only minimally probative. Because the only disputed issue was whether the acts occurred, the danger of unfair prejudice far outweighed the evidence's value for a proper purpose, and it should have been excluded under Evid.R. 403(A).
 {¶ 30} Neither was the identity of the victim's assailant in dispute; Crotts did not raise this issue, and the evidence admits of no possibility that the victim mistakenly identified Crotts after being assaulted by someone else.[37] Therefore, while evidence of a plan may be relevant to prove identity, the same Evid.R. 403(A) and 404(B) analysis relevant to intent is relevant to identity as well.
 {¶ 31} Even if the issues of identity or intent were in dispute, the State's evidence of Crotts's "plan" to sexually assault the victim fails. The State argues that Crotts executed a plan to lure boys to his home with promises of employment and then "acclimate" them to his sexual advances by exposing them to his gay lifestyle. As with other evidence under 404(B), the existence of a plan must be inferred independently from an inference of propensity, and the State's argument cannot pass this test. The inference of a plan can be made only if one first infers that Crotts is homosexual, that he, therefore, is attracted to minors, and that he employed boys in his businesses as a means of gaining access to them. Not only are these inferences invalid,[38] they can only be made after one has made the forbidden inference of propensity.
 {¶ 32} When properly used, modus operandi evidence does not prove identity through the defendant's propensity. Where a murderer has cut off a victim's ear, evidence that the defendant previously committed a murder and cut off the victim's ear may be admissible[39] to show the murderer's identity through the existence of a modus operandi, despite the fact that the evidence also shows the defendant's propensity for murder and ear removal. The evidence is potentially admissible because the inference of identity does not arise from the inference of general propensity, but from the inference of commonality between specific events. Nevertheless, because the inferences of propensity and commonality can be confused, the standard for admitting modus operandi evidence requires a showing of a "behavioral fingerprint" so distinct that the evidence's purpose to establish identity is clear.[40] The inference of commonality must be so strongly probative of identity that it outweighs the unfairly prejudicial effect of the propensity inference.
 {¶ 33} Moreover, the phrase "behavioral fingerprint" reinforces the need for a disputed issue of identity, and the connection between the events must be so apparent that the commonality inference is distinct and independent from the propensity inference. Not only is the evidence here irrelevant unless first used to show propensity, the acts offered do not show any coherent plan because they are merely a hodgepodge of incidents wrapped in innuendo stemming from Crotts's sexual orientation.
 {¶ 34} Although it was error to admit character evidence for the purpose of showing that Crotts acted in conformity therewith, we must determine whether the errors were prejudicial. Where the error affects constitutional rights, it must be harmless beyond a reasonable doubt, while non-constitutional error can be found harmless if substantial other evidence supports the conviction.[41] While the transcript here presents a compelling case for determining that the cumulative errors denied Crotts's constitutional rights to a fair trial,[42] we need not make such a determination because the evidence here does not support a finding of harmlessness under either standard.
 {¶ 35} The evidence showed significant inconsistencies among the statements the victim initially made to police and medical personnel, the statement he later gave to a defense investigator, and his testimony at trial. His twin brother's statements to police and to the investigator also contained inconsistencies, and there was no physical evidence to support the claim of sexual assault. The victim initially stated that Crotts assaulted him from behind, attempted to penetrate him anally, and that he used a ceremonial sword as a weapon or an accessory during the assault. The physical evidence, however, failed to support these allegations, and one could argue that the victim's testimony was modified to accommodate the conflicts. Moreover, there was other evidence in Crotts's favor, including testimony from the victim's brothers concerning his lack of credibility, and evidence that the victim's brothers maintained their relationships with Crotts after the incident.
 {¶ 36} In addition to the lack of evidence showing Crotts's guilt, the prosecution engaged in a number of tactics designed to introduce irrelevant or inadmissible evidence or to unfairly encourage the jury to speculate on excluded evidence. For example, despite the exclusion of certain evidence concerning Crotts's sexual orientation, the prosecution made repeated attempts to place that evidence before the jury, succeeding in some instances and casting unmistakable innuendo in numerous others. Furthermore, the judge's admission of some evidence could have made her exclusion of other evidence the subject of even more speculation by the jury; while she excluded questioning whether P. and C. were homosexual, she nonetheless admitted the photo of them bearing the caption, "Sisters for Life." She also allowed the victim's twin to testify that the Awana group met at an "all gay" church and allowed P. to testify that Crotts attended a church that was rented to "the gay community."[43]
 {¶ 37} Finally, the prosecution mischaracterized certain facts that increased the prejudicial effect of the erroneously admitted evidence. The prosecution implied that the Awana group was some type of gay outreach program aimed at recruiting young boys for sex, although one of the police officers who testified on the State's behalf stated that the group is a legitimate Christian boys' club. The prosecution also implied that Crotts induced and orchestrated the photographs of P. and C., when P. testified that they requested the photos themselves.
 {¶ 38} The analysis of whether "substantial other evidence" supports a jury's verdict cannot proceed in a vacuum and, therefore, the standard must consistently relate to other examples of evidence and errors. For example, where the defendant has raised appropriate objections, the standard for showing prejudice (or its absence) should not exceed that necessary for establishing plain error.[44] The effect on the outcome, moreover, should not exceed the "reasonable likelihood" standard for showing prejudice in ineffective assistance of counsel cases, where it is necessary only to show "a probability sufficient to undermine confidence in the outcome."[45] Furthermore, the requirement of "substantial other evidence" should exceed that necessary to affirm a verdict against a manifest weight challenge, otherwise the recognition of error would have no specific remedy because all defendants can challenge manifest weight regardless of evidentiary errors.
 {¶ 39} While helpful in avoiding procedural inefficiency, the doctrine of harmless error should be employed judiciously lest this procedural tool become a weapon against defendants' substantive rights. In light of all these principles, the likelihood that the other acts evidence improperly affected the verdict cannot be ignored. The third assignment of error is sustained, and the remaining assignments are moot.[46]
Judgment reversed and remanded.
It is ordered that the appellant recover from appellee costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, J., and TIMOTHY E. McMONAGLE, J., concur.
[1] R.C. 2905.01.
[2] R.C. 2907.05.
[3] According to a police officer who testified for the State, "Awana" is a Christian boys' club comparable to the boy scouts.
[4] R.C. Chapter 2950.
[5] Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Johnson, 88 Ohio St.3d 95, 108,2000-Ohio-276, 723 N.E.2d 1054.
[6] Richardson v. United States (1999), 526 U.S. 813, 817,119 S.Ct. 1707, 143 L.Ed.2d 985 (citations omitted).
[7] Id. at 817-818.
[8] (1991), 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555.
[9] State v. Rance, 85 Ohio St.3d 632, 637, 1999-Ohio-291,710 N.E.2d 699.
[10] See State v. Fleming (1996), 114 Ohio App.3d 294, 297-298,683 N.E.2d 79.
[11] Rance, supra; see, also, State v. Richey, 64 Ohio St.3d 353, 369,1992-Ohio-44, 595 N.E.2d 915 (felony murder and underlying felony are not allied because statute lists nine separate predicates).
[12] See Schmuck v. United States (1989), 489 U.S. 705, 717-718,109 S.Ct. 1443, 103 L.Ed.2d 734 (indictment does not charge offenses that are not included, and defendant is not entitled to jury instruction unless offense is included).
[13] (1980), 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715.
[14] Id. at 694.
[15] Consistency, however, may not be the only constitutional requirement when a number of separate underlying offenses can be used as alternatives in proving a greater offense, as in Rance, Richey, andWhalen. In such cases the underlying offenses should be considered means for purposes of multiple punishment and lesser included offense analysis because they are predicates that show a single element of mens rea.Schad, 501 U.S. at 644. Nevertheless, the elements of the predicate felony require specificity in charging and juror unanimity because each represents conduct that is itself a violation of law. Richardson,526 U.S. at 818-819.
[16] (Emphasis sic.) State v. Stallings, 89 Ohio St.3d 280, 289,2000-Ohio-164, 731 N.E.2d 159, quoting Jackson v. Virginia (1979),443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560.
[17] State v. Martin (1983), 20 Ohio App. 172, 175, 20 OBR 415,485 N.E.2d 717.
[18] Id.
[19] Although objected to at trial, Crotts has not challenged this evidence on appeal.
[20] Although Crotts challenges this statement in his fourth assignment of error, which claims the judge erred in allowing the prosecutor to question P. concerning his brother's credibility, his response to the question is more aptly addressed under this assignment.
[21] State v. Lowe, 69 Ohio St.3d 527, 532, 1994-Ohio-345,634 N.E.2d 616.
[22] Id. at 533; State v. Broom (1988), 40 Ohio St.3d 277,533 N.E.2d 682, paragraph one of the syllabus.
[23] Rohde v. Farmer (1970), 23 Ohio St.2d 82, 89, 52 O.O.2d 376,262 N.E.2d 685; Cooter Gell v. Hartmarx Corp. (1990), 496 U.S. 384,405, 110 S.Ct. 2447, 110 L.Ed.2d 359.
[24] United States v. Brown (C.A.9, 1989), 880 F.2d 1012, 1014-1015.
[25] Id. at 1015-1016.
[26] Govt. of Virgin Islands v. Archibald (C.A.3, 1993), 987 F.2d 180,185-186.
[27] State v. Smith (1990), 49 Ohio St.3d 137, 141, 551 N.E.2d 190; but, see, Thompson v. United States (C.A.D.C., 1988), 546 A.2d 414,422-423 (intent must be genuine issue, and not merely formal).
[28] United States v. Clark (C.A.6, 1993), 988 F.2d 1459, 1465.
[29] Thompson, 546 A.2d at 422; Archibald, 987 F.2d at 186.
[30] Id. at 185-186.
[31] Thompson, 546 A.2d at 421; Park, Leonard Goldberg, Evidence Law (1998) 172, Section 5.22.
[32] Id.; see, also, 1 Imwinkelried, Uncharged Misconduct Evidence, (Rev.Ed. 2001), 4-3, Section 4.01.
[33] Webster's New Collegiate Dictionary (1976) 923.
[34] Id. at 751.
[35] State v. Picklesimer (Oct. 15, 1996), Pickaway App. No. 96CA2, citing Imwinkelried, at Section 3.15.
[36] Although the Picklesimer decision states that the evidence may be relevant to prove the charged acts or for res gestae purposes, there are few circumstances, generally referring to defenses of accident, where it can be shown that the charged act is being proven without resort to an inference of propensity. 1 Imwinkelried, at Section 4.01. Moreover, while not at issue here, the use of prejudicial other acts should be severely scrutinized when offered as inseparable context or background evidence. Such evidence, if proper, normally can be shown to have a specific purpose under Evid.R. 404(B) rather than being introduced for an unspecified res gestae purpose. See, e.g., State v. Lowe, supra,69 Ohio St.3d at 531 (examples of res gestae also admissible as proof of opportunity or knowledge).
[37] Archibald, supra.
[38] An attraction to juveniles cannot be inferred from the premise that one is homosexual, and an attempt to lure juveniles for sex cannot be inferred from their employment in low-wage jobs.
[39] Again, subject to Evid.R. 403(A).
[40] Lowe, 69 Ohio St.3d at 531.
[41] State v. Griffin (2001), 142 Ohio App.3d 65, 79,753 N.E.2d 967.
[42] Id.
[43] It also seems that the prosecution's leading questions to the victim's twin might have yielded a mistaken response; it appears that the Awana group met at a church other than the one P. referred to as being rented by the gay community.
[44] State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68,759 N.E.2d 1240.
[45] Strickland v. Washington, supra, 466 U.S. at 694.
[46] App.R. 12(A)(1)(c).