# GOVERNMENT OF THE VIRGIN ISLANDS
## v.
## ALAN ARCHIBALD, Appellant

[987 F.2d 180]

No. 92-7143

United States Court of Appeals
for the Third Circuit

March 1, 1993

THURSTON T. MCKELVIN (Argued), Office of Federal Public Defender, Charlotte Amalie, St. Thomas, V.I., *for appellant*

JAMES A. HURD, JR. (Argued), Office of United States Attorney, Charlotte Amalie, St. Thomas, V.I., *for appellee*

BEFORE: BECKER, COWEN and ROTH, *Circuit Judges*

## OPINION OF THE COURT

COWEN, *Circuit Judge*

Alan Archibald appeals his conviction on three counts of aggravated rape in violation of V.I. Code Ann. tit. 14, § 1700(a)(1) (Supp. 1990).[1] Archibald asserts that the district court committed reversible error by admitting evidence of prior criminal conduct and improper hearsay testimony. We agree and therefore will reverse Archibald's conviction and remand for a new trial.

### I.

The alleged victim in this case is Latoya Chinnery. At the time of the events in question, Latoya was ten years of age and living with her aunt, Marlene Chinnery. In October 1991, Marlene Chinnery noticed that the screen from Latoya's bedroom window and several

---

[1] V.I. Code Ann. tit. 14, § 1700(a)(1) provides: "Whoever perpetrates an act of sexual intercourse or sodomy with a person not the perpetrator's spouse . . . who is under thirteen years of age . . . is guilty of aggravated rape . . . ."

stones were lying on Latoya's bedroom floor. The aunt also found a long curtain rod and a piece of board outside Latoya's bedroom window and stains on Latoya's bedspread.

When confronted by her mother, Ursula Williams, Latoya stated that she had engaged in sexual intercourse with Archibald. Latoya testified that she and Archibald had intercourse on three separate occasions beginning in October 1991. According to Latoya, Archibald would attract her attention at night by throwing rocks at her screen or by knocking on the window. She would let Archibald in through a screen door and have intercourse with him. Archibald would then leave the house. Latoya admitted that she liked Archibald and knew that he was her sister Tasha's boyfriend.

Dr. O.R. Ramos examined Latoya and found that her hymen had been torn. Dr. Ramos testified that Latoya had experienced several penetrations in the past, but did not expressly state whether he believed Latoya had engaged in intercourse. He offered no testimony implicating Archibald.

## II.

On direct examination Ursula Williams testified that she knew Archibald because he was a neighbor and because he had fathered the child of her daughter Tasha. She further testified that, at the time of trial, Tasha was fifteen years of age and the child was six months old. Williams' testimony thus revealed that Archibald had engaged in sexual intercourse with Tasha when she was thirteen or fourteen years old.[2] Under Virgin Islands law, such intercourse constitutes third degree rape. V.I. Code Ann. tit. 14, § 1703 (Supp. 1990).[3]

---

[2] Although we are unable to locate in the trial transcript any instance in which either party offered evidence of Archibald's age, the government does not dispute that the jury knew Archibald was at least seventeen years of age when he and Tasha conceived their child.

[3] V.I. Code Ann. tit. 14, § 1703 provides:

Any person under 18 years of age but over 16 years of age who perpetrates an act of sexual intercourse or sodomy with a person not the perpetrator's spouse who is under 16 years of age but over 13 years of age, under circumstances not amounting to rape in the first degree, is guilty of rape in the third degree . . . ."

If Archibald had been over 18 years of age, the offense would have been rape in the second degree. V.I. Code Ann. tit. 14, § 1702 (Supp. 1990).

Archibald asserts that evidence of his prior criminal act should have been excluded under Fed. R. Evid. 404(b). Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Archibald argues that the evidence of his sexual relations with Tasha was not probative of any material issue in the case other than to show that he had a propensity to engage in intercourse with underage females. The government offers three arguments in response. First, it suggests that Archibald waived his right to challenge admission of the evidence by failing to make a timely objection. Second, the government argues that Rule 404(b) does not preclude evidence of Archibald's sexual encounter with Tasha because a jury probably would not view the encounter as a bad act. Third, the government asserts that the evidence was admissible under Rule 404(b) because it was introduced to support the in-court identification of Archibald by Williams and Latoya, not to show Archibald's propensity to engage in illicit sex with children. We will address each argument separately.

## A.

The government suggests that Archibald failed to preserve his Rule 404(b) objection by not objecting immediately after Williams testified that Archibald fathered Tasha's child. At trial, Williams' testified as follows:

Q. How do you happen to know Alan Archibald?
A. He is a neighbor of mine and he have a child with my daughter Tasha Chinnery.
Q. How old is the child?
A. The baby?
Q. Yes?
A. He is six months.
Q. How old is Tasha?
A. 15.

App. at 45-46. Immediately following this response, the government requested a sidebar conference. Acknowledging that it just

had elicited evidence of a prior crime, the government asked the court to instruct the jury that the evidence was offered only to show how the witness knew Archibald. During the ensuing colloquy, counsel for Archibald objected to the admission of the testimony on grounds of both Rule 404(b) and undue prejudice. The district court disregarded the objection, gave the jury a limiting instruction as requested by the government, and allowed the government to continue examining Williams.

██ ██ Fed. R. Evid. 103(a)(1) requires a party to make a "timely objection." The requirement of a timely objection promotes judicial economy by enhancing the trial court's ability to remedy the asserted error. If a party fails to object in a timely fashion, the objection is waived and we will review the admission of evidence only for plain error. See United States v. Young, 470 U.S. 1, 13-14, 105 S. Ct. 1038, 1045-46 (1985); United States v. Ward, 793 F.2d 551, 555 (3d Cir. 1986).

██ The appropriate time to raise an objection is as soon as the party knows or reasonably should know of the grounds for objection, unless postponement is desirable for a special reason and not unfair to the opposition. United States v. Gibbs, 739 F.2d 838, 849 (3d Cir. 1984) (in banc), cert. denied, 469 U.S. 1106, 105 S. Ct. 779 (1985). Usually, the grounds for objection become apparent "as soon as the question is asked, since the question is likely to indicate that it calls for inadmissible evidence." C. McCormick, On Evidence § 52, at 201 (4th ed. 1992). Occasionally, however, a question that is unobjectionable elicits an objectionable reply, or previously admitted testimony becomes objectionable only in the light of subsequent testimony. In such circumstances, the grounds for objection are not known until after the objectionable testimony is given, and an "after-objection" may be interposed when the grounds become apparent. See Benjamin v. Peter's Farm Condominium Owners Ass'n, 820 F.2d 640, 642 n.5 (3d Cir. 1987) (party did not know of grounds for objecting to expert testimony until after the party finished cross-examining the witness); McCormick, supra § 52.[4]

---

[4] It is preferable for counsel to specify the remedy sought. However, any phraseology that calls the judge's attention to the grounds for objection in a timely

■ In the context of the present case, counsel for Archibald reasonably could not have anticipated that Williams would offer evidence of a prior crime in response to the government's question, "How do you happen to know Alan Archibald?" The government implicitly concedes as much by alleging that Williams'. testimony was offered "inadvertently." Government Brief at 10. Accordingly, the first time that the grounds for objection became apparent was after Williams responded to the question. At this point, the damage to Archibald already had been done, and defense counsel's rather brief postponement of his objection neither prejudiced the government nor in any way impaired the court's ability to remedy the asserted error. Because the delay was minimal and caused no demonstrable prejudice, Archibald's objection was timely. See Benjamin, 820 F.2d at 642 n.5.

## B.

The government asserts that Archibald's intercourse with Tasha was not a "crime[], wrong[], or act[]" under Rule 404(b) because it was bad only in a "legally technical sense," which the jury was not likely to recognize. Government Brief at 9. This argument is unpersuasive.

■ Under Virgin Islands law, Archibald's intercourse with Tasha constituted statutory third degree rape. See V.I. Code Ann. tit. 14, § 1703. By any reasonable definition, statutory rape is not a technical offense. In addition, it is irrelevant whether the jury knew that Archibald's prior intercourse with Tasha constituted a crime. Rule 404(b) applies to any extrinsic acts that might adversely reflect on the actor's character. See Huddleston v. United States, 485 U.S. 681, 685, 108 S. Ct. 1496, 1499 (1988); Government of the Virgin Islands v. Harris, 938 F.2d 401, 419-20 (3d Cir. 1991). Given that Archibald was on trial for having engaged in intercourse with a ten-year-old girl, we find it highly likely that the jury drew an adverse character inference from evidence that Archibald had intercourse with the victim's sister, another minor female.

## C.

Having decided that Archibald preserved his Rule 404(b) objection and that Archibald's fornication with Tasha was a prior

---

manner is sufficient. McCormick, supra § 52.

"crime[], wrong[], or act[]" under Rule 404(b), we now address the government's claim that the disputed evidence was properly admitted for the limited purpose of establishing how Williams and Latoya knew Archibald. According to the government, how Williams and Latoya knew Archibald was probative of their in-court identifications of him.

Rule 404(b) prohibits the admission into evidence of other crimes, wrongs, or acts to show that a defendant has a propensity to commit criminal acts. Harris, 938 F.2d at 419. If offered for a permissible material purpose, however, evidence of extrinsic crimes, wrongs, or acts is admissible under Rule 404(b), subject only to the usual limitations imposed by Fed. R. Evid. 402 and 403. Id.[5] The threshold issue under Rule 404(b), therefore, is "whether th[e] evidence is probative of a material issue other than character." Huddleston, 485 U.S. at 686, 108 S. Ct. at 1499; accord United States v. Echeverri, 854 F.2d 638, 644 (3d Cir. 1988).

■ In United States v. Dansker, 537 F.2d 40, 57-58 (3d Cir. 1976), cert. denied, 429 U.S. 1038, 97 S. Ct. 732 (1977), a pre-Rules case, we held that evidence of prior offenses was admissible to establish how a witness knew the defendants. The government's case against the Dansker defendants rested largely on the testimony of an unindicted co-conspirator, and both the existence and the nature of the relationship between the witness and the defendants "were of critical importance" to the witness' credibility. Id. at 58.[6] Although the rule in this circuit at the time of Dansker was to admit extrinsic acts if relevant for "any purpose" other than to show a propensity to commit the crime, id. (quoting United States v. Stirone, 262 F.2d 571 (3d Cir. 1958), rev'd on other grounds, 361 U.S. 212, 80 S. Ct. 270 (1960)), we found that the evidence of the relationship between the witness and the defendants was "clearly relevant to far more than the defendants' mere propensity to commit crime." Id. Here, by contrast, Williams' testimony revealing the prior sexual encounter between Tasha and Archibald was not probative of any material issue except Archibald's propensity to com-

---

[5] Rule 402 mandates the exclusion of irrelevant evidence. Rule 403 allows for the exclusion of relevant evidence on grounds of undue prejudice, confusion, or waste of time.

[6] We also found that the evidence was probative of modus operandi and of motive on the part of the defendants. Dansker, 537 F.2d at 58.

mit the charged crime. As a result, the evidence was inadmissible under Rule 404(b).

We do not disagree with the government that evidence of the quasi-family relationship between Williams and Archibald provided some support for the identifications made by both Williams and Latoya. The accuracy of the identifications by Williams and Latoya, however, was neither an actual nor even a probable material issue in the case. This was not a case where the defendant claimed or was reasonably likely to claim mistaken identity. There was no question that he had known the victim and her mother for years as neighbors and friends. Moreover, Williams did not claim to be an eyewitness to the alleged rapes, and in light of Latoya's description of events there was no question as to whether she would have seen Archibald well enough to identify him.

In a vain attempt to fashion a material issue, the government argues that it was unclear what role identification would play because Archibald had filed a notice of alibi. In the notice of alibi, Archibald claimed that he was with certain named individuals between the hours of 7:30 p.m. and 12:00 a.m. on one of the nights in question. Nothing in the notice suggested that Archibald would deny having known Latoya and her mother for several years. Furthermore, nothing implied that Archibald would contradict those portions of Latoya's testimony indicating that she was raped in a manner that would have made the identity of her perpetrator apparent. Under these circumstances, the notice of alibi at most foreshadowed the defense that Latoya flatly lied about having intercourse with Archibald. It did not imply that Archibald would question Latoya's ability to make an accurate identification.

■ An alternative ground for excluding the evidence of Archibald's intercourse with Tasha is Fed. R. Evid. 403. Rule 403 authorizes a court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. When weighing the factors under Rule 403, the trial court "'must appraise the genuine need for the challenged evidence and balance that necessity against the risk of prejudice to the defendant." United States v. Blyden, 964 F.2d 1375, 1378 (3d Cir. 1992) (quoting United States v. Scarfo, 850 F.2d 1015, 1019 (3d Cir.), cert. denied, 488 U.S. 910, 109 S. Ct. 263 (1988)).

■ As a general rule, we exercise great restraint in reviewing a district court's ruling on the admissibility of evidence under

Rule 403. Scarfo, 850 F.2d at 1019. Still, we have stated that "[w]here an objection does invoke Rule 403, the trial judge should record his balancing analysis to the extent that his exercise of discretion may be fairly reviewed on appeal." United States v. Lebovitz, 669 F.2d 894, 901 (3d Cir.) (quoting United States v. Long, 574 F.2d 761, 766 (3d Cir.), cert. denied, 439 U.S. 985, 99 S. Ct. 577 (1978)), cert. denied, 456 U.S. 929, 102 S. Ct. 1979 (1982).[7] Where, as here, the trial judge fails to perform the required balancing and to explain the grounds for denying a Rule 403 objection, we may undertake to examine the record ourselves, id.; see United States v. Schwartz, 790 F.2d 1059, 1062 (3d Cir. 1986), and we need not defer to the reasoning of the district court, Government of the Virgin Islands v. Pinney, 967 F.2d 912, 918 (3d Cir. 1992).

 As already suggested, the evidence of the prior sexual relationship between Archibald and Tasha had little if any probative value. First, the disputed evidence was not necessary to establish persuasively that Williams and Latoya knew Archibald well enough to identify him. Aside from the fact that the issue of identification was not disputed, it would have been more than sufficient for the government to have elicited testimony showing that Williams and Archibald were neighbors for several years; that Archibald was Tasha's boyfriend; and that Archibald was in Williams' house virtually every day for several years while growing up. Second, even if the court was justified in permitting the jury to learn that Williams, Archibald, and Latoya also had some type of family or quasi-family relationship, it still was not necessary to inform the jury of the illicit sexual act that created the relationship. Cf. United States v. Cook, 538 F.2d 1000, 1005 (3d Cir. 1976) (where only *the fact* of a prior felony conviction was relevant, court erred in admitting prejudicial evidence of *the nature* of the felony). By allowing the government to reveal the precise origin of the relationship, the district court exceeded what was necessary for the limited purpose of

---

[7] Although counsel for Archibald did not identify Rule 403 by number, he expressly objected to the evidence as prejudicial. The record also suggests that counsel was interrupted in the process of arguing that the probative value of the evidence was substantially outweighed by its prejudicial effect. Such an objection was sufficiently specific to meet the requirements of Fed. R. Evid. 103(a) and to confer on the district court the responsibility of articulating the grounds for denying the objection. See Lebovitz, 669 F.2d at 901.

establishing the accuracy of the identifications made by Williams and Latoya. See id.

Substantially outweighing the probative value of the disputed evidence was the severe prejudice to Archibald. Absent Williams' testimony, the government's case was an extremely close one, resting almost entirely on the testimony of the ten-year-old victim. There was no eyewitness and no physical evidence inculpating Archibald. The evidence that Archibald fathered Tasha's baby facelifted the government's case by injecting decisive proof of "guilt by reputation." See Government of the Virgin Islands v. Toto, 529 F.2d 278, 283 (3d Cir. 1976). It suggested to the jury that Archibald had a propensity to engage in intercourse with minor females, and that he had a particular affinity for the underage daughters of Ursula Williams.[8]

We conclude that even if the district court properly determined the testimony in question to be admissible under Rule 404(b), it should have excluded the evidence under Rule 403. Because it is not "highly probable that the evidence . . . did not contribute to the jury's judgment of conviction," the district court's error was not harmless and we must remand for a new trial. Schwartz, 790 F.2d at 1062 (quoting Toto, 529 F.2d at 284).

### III

Archibald also asserts that the district court erred by allowing the government to elicit hearsay testimony from Williams on redirect examination. The government does not dispute that the testimony was hearsay, but responds that Archibald's cross-examination of Williams "opened the door."

During cross-examination, defense counsel asked Williams whether she had ever seen Archibald and Latoya alone and whether she had ever "overheard any conversations with Latoya and [Tasha] concerning Mr. Archibald." App. at 57-58. Williams

---

[8] The prejudice to Archibald became even more severe toward the end of the trial, when the government improperly sought to focus the jury's attention on Archibald's suggested penchant for sex with underage females. On cross-examination, the government got Archibald's grandmother to acknowledge that she had expressed shock and disbelief when she heard that Archibald had been accused of having intercourse with Latoya. Having successfully laid the trap, the government then asked: "Were you similarly shocked and upset about the other young girl in the house?" Trial Transcript at 84.

answered in the negative to both questions. On redirect examination Williams testified, over the objection of defense counsel, that Tasha had told Williams that Archibald and Latoya were kissing while dancing at a party. In response to defense counsel's objection, the district court ruled that counsel had "opened the door" to the disputed testimony. App. at 59.

The record reveals that the district court's ruling was most likely predicated on a significant misperception of the scope of defense counsel's cross-examination. During redirect examination, the prosecutor twice misrepresented—once to the witness as a preface to a question and a second time in argument to the court—that defense counsel had asked whether Tasha ever told the witness about having seen Latoya and Archibald together. It was immediately following the prosecutor's second mischaracterization of the cross-examination that the district court, without correcting or contradicting the prosecutor, ruled that defense counsel had opened the door.

 Whatever the cause, the district court erred by ruling that defense counsel opened the door to the disputed testimony. The doctrine of "opening the door," sometimes referred to as "curative admissibility," provides that when one party introduces inadmissible evidence, the opposing party thereafter may introduce otherwise inadmissible evidence to rebut or explain the prior evidence. McCormick, supra § 57; see United States v. Whitworth, 856 F.2d 1268, 1285 (9th Cir. 1988), cert. denied, 489 U.S. 1084, 109 S. Ct. 1541 (1989). Because the government does not argue that Williams' testimony on cross-examination was inadmissible, either as hearsay or for any other reason,[9] her testimony did not "open the door" to the admission of hearsay on redirect examination.

 Nor was Williams' hearsay testimony admissible under a related exception, sometimes referred to as the principle of completeness. See generally McCormick, supra § 56. When a witness testifies on cross-examination as to part of a conversation, statement, transaction or occurrence, the principle of completeness allows the party calling the witness to elicit on redirect examination "the whole thereof, to the extent it relates to the same subject mat-

---

[9] The government argues that defense counsel "invit[ed]" a hearsay response, not that he elicited such a response. Government Brief at 12.

ter and concerns the specific matter opened up." *United States v. Walker*, 421 F.2d 1298, 1299 (3d Cir.) (quoting *United States v. Evans*, 239 F. Supp. 554, 559 (E.D. Pa. 1965), aff'd, 359 F.2d 776 (3d Cir.), cert. denied, 385 U.S. 863, 81 S. Ct. 120 (1966)), cert. denied, 399 U.S. 931, 90 S. Ct. 2261 (1970); accord *Cafasso v. Pennsylvania R.R. Co.*, 169 F.2d 451, 453 (3d Cir. 1948); 2 Torcia, Wharton's Criminal Evidence § 417 (1986); cf. Fed. R. Evid. 106 (specifying a similar rule applicable only to writings and recorded statements). The principle of completeness does not apply, however, to separate utterances or occurrences pertaining to a different subject. See 7 J. Wigmore, Evidence § 2119 (Tillers rev. 1983). It does not apply here because Williams' testimony on redirect examination probed a subject never raised during cross-examination: what Tasha told Williams about Archibald and Latoya.

The government's reliance on *United States v. Womochil*, 778 F.2d 1311 (8th Cir. 1985), is misplaced. There, defense counsel made a false exculpatory impression by eliciting parts of a hearsay statement on cross-examination. On redirect examination, the district court permitted the prosecutor to correct the false impression by eliciting the complete statement. Id. at 1315. The Court of Appeals for the Eighth Circuit affirmed, approving "the use of otherwise inadmissible evidence on redirect examination to clarify or complete an issue opened up by defense counsel on cross-examination." Id.

■ *Womochil*, which implicates both the doctrine of opening the door and the principle of completeness, is distinguishable from the present case. Here, the hearsay statements elicited on redirect examination did not clarify or complete any portion of a statement or conversation elicited on cross-examination. Indeed, on cross-examination, defense counsel did not even allude to conversations between Williams and Tasha. Because defense counsel did not offer, or even raise the subject of, hearsay statements made by Tasha to Williams, the district court abused its discretion by admitting such statements on redirect examination. See *Government of the Virgin Islands v. Martinez*, 847 F.2d 125, 130 (3d Cir. 1988).

■ The hearsay testimony admitted on redirect examination was the only evidence, aside from the victim's testimony, corroborating Archibald's alleged sexual attraction to Latoya. As the primary if not sole independent evidence of motive, the testimony

was a linchpin of the government's case and likely contributed to the judgment of conviction. The admission of the testimony, therefore, was not harmless error. See Toto, 529 F.2d at 283 (error is harmless only if it is highly probable that it did not contribute to the judgment).

## IV.

For the foregoing reasons, we will vacate Archibald's conviction and remand for a new trial.