

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-23-2006

# USA v. Rahamin

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1982

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Rahamin" (2006). *2006 Decisions.* Paper 1549.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1549

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 04-1982

————

UNITED STATES OF AMERICA,

v.

OFER RAHAMIN,
a/k/a
UNCLE

Ofer Rahamin,
　　　　　Appellant

————

Appeal from the United States District Court
for the Western District of Pennsylvania
(Criminal No. 02-cr-00154)
(Honorable William J. Standish, United States District Judge)

————

Submitted pursuant to Third Circuit L.A.R. 34.1(a)
January 31, 2006

Before: McKEE, VAN ANTWERPEN, and SILER,[*] Circuit Judges.

(Filed:   February 23, 2006)

————

OPINION OF THE COURT

————

---

[*] The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

SILER, *Circuit Judge*.

Defendant Ofer Rahamin was convicted of one count of conspiracy to distribute ecstasy and one count of possession with intent to distribute ecstasy. Rahamin appeals on numerous grounds. We affirm the conviction, but vacate the sentence and remand for resentencing in accordance with *United States v. Booker*, 125 S.Ct. 738 (2005).

## BACKGROUND

Rahamin was indicted by a federal grand jury in 2002 for one count of conspiracy to possess with intent to distribute a quantity of ecstasy between February 2-5, 2002. The events leading up to this indictment began with a DEA investigation into an ecstasy importation and distribution ring. This investigation eventually led to the arrest of Oleg Logatchev, Jeremy Krouse, and Jacob Rosen. These individuals agreed to cooperate with the DEA and, using Logatchev and Krouse, the DEA set up a sting to catch their ecstasy suppliers – Yuri Pylnev and Rahamin. Under DEA guidance, Logatchev called Pylnev on February 2 and ordered 20,000 ecstasy pills. Pylnev testified that he called Rahamin to receive approval for the shipment and Rahamin okayed the sale, giving Pylnev instructions about whom to contact. When the pills were delivered on February 5 by Stanislav Lantsberg, the transaction was recorded by the DEA. After the buy was completed, DEA agents arrested Lantsberg and Pylnev. Both agreed to cooperate with authorities.

In March 2003, a superseding indictment was returned, charging Rahamin with one count of conspiracy to possess with intent to distribute a quantity of ecstasy between January 2001 and February 5, 2002, and one count of possession with intent to distribute a quantity of ecstasy on February 5, 2002. Trial commenced in April 2003, and Rahamin was found

guilty on both counts.  The district court sentenced Rahamin to 262 months in prison.

## DISCUSSION

### 1.  Right to a Fair Trial

Because of the late date of the superseding indictment, March 26, 2003, and the fact that he was not arraigned on that indictment until the day of trial, April 7, 2003, Rahamin claims that his right to a fair trial was violated due to inadequate time to prepare a defense to the much broader charges contained in the superseding indictment.  However, the Speedy Trial Act's requirement of a 30-day trial preparation period does not recommence upon the return of a superseding indictment.  *United States v. Rojas-Contreras*, 474 U.S. 231, 234-35 (1985).  Instead, the Act "places broad discretion in the District Court to grant a continuance when necessary to allow further preparation."  *Id.* at 236.

Moreover, defense counsel did not request a continuance.  In fact, at the arraignment, defense counsel affirmed that they were "ready to go to trial."  Furthermore, Rahamin received notice of the superseding indictment shortly after the grand jury returned it, and he requested arraignment on the same day as the trial.  Although the superseding indictment did add a charge and increased the period of the conspiracy, the decisive factor in this determination is defense counsel's statement at the arraignment hearing that they were ready to go trial on that day.  Given this, it cannot be said the district court abused its discretion in failing to *sua sponte* grant a continuance.

### 2.  Speedy Trial Act

As for Rahamin's claim that his right to a speedy trial was violated because the superseding indictment was filed more than 30 days from the date of his arrest, the Speedy

Trial Act states, "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 28 U.S.C. § 3161(b).

The superseding indictment was handed down nearly five months after Rahamin's arrest. Although outside the 30-day period, a "superseding indictment that issues more than 30 days after the arrest, but before the original indictment is dismissed, does not violate § 3161(b)." *United States v. Mosquera*, 95 F.3d 1012, 1013 (11th Cir. 1996); *see United States v.Budzyna*, 666 F.2d 666, 669-71 (1st Cir. 1981). In *United States v. Rabb*, 680 F.2d 294, 296-97 (3d Cir. 1982), this court cited with approval the decision in *Budzyna*, holding that § 3161(b)'s "time limitations [did] not apply to superseding indictments generally." Based upon these cases, no violation of the Speedy Trial Act occurred.

## 3. Admission of Video and Audio Evidence

Rahamin objects to the admission of audio and video tapes of the controlled buy on three grounds: (1) the district court failed to make the necessary finding that Rahamin was a member of the conspiracy discussed in the tape; (2) the statements on the tapes were not made in furtherance of the conspiracy; and (3) the last portion of the tape was nothing more than "idle chatter" and was therefore not in furtherance of the conspiracy.

## a. Preservation

Before examining the merits of Rahamin's claim, we must address the issue of preservation. Rahamin's counsel did file a motion in limine to prevent the government from introducing the audio and video evidence. However, the district court deferred the ruling

until the government sought to introduce the evidence at trial after having laid a proper foundation. Rahamin's counsel then declared, "I'll make the appropriate objection at the appropriate time, Your Honor." However, when the evidence was introduced at trial, defense counsel stated that he had "no objection."

"[W]e have held that a pre-trial motion in limine relieves a defendant of his need to make contemporaneous objections in order to preserve an issue on appeal" where that motion in limine was definitively denied pretrial. *United States v. Mussare*, 405 F.3d 161, 167 (3d Cir. 2005) (citing *Gov't of the V.I. v. Joseph*, 964 F.2d 1380, 1384-85 (3d Cir. 1992)). However, the issue is not preserved for appeal if the defendant prevailed on the motion in limine and failed to make a contemporaneous objection, as counsel has an obligation to renew his objection once he thought the prior court ruling was being violated. *See Wilson v. Vt. Castings, Inc.*, 170 F.3d 391, 395 n.7 (3d Cir. 1999).

Although Rahamin had made the district court aware of the substance of his objection, the district court never made a ruling on the issue. Further, when the evidence was introduced at trial, defense counsel explicitly stated that he had no objection. Due to this, the rationale behind finding preservation in certain circumstances where a party fails to object does not apply here. Ultimately, we have no way of knowing how the district court would have ruled. Given this, the claim is not preserved. To do otherwise would encourage parties to withhold objections at trial where they think the objection might have a better chance of being sustained on appeal. Accordingly, we review the district court's decision to admit the evidence for plain error. *See United States v. Adams*, 252 F.3d 276, 284-85 (3d Cir. 2001) (relating the prongs in determining plain error).

**b. Introduction of the Video and Audio Tapes**

Looking first at the existence of error, Rule 801 exempts from the definition of hearsay "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" that is offered against a party. FED. R. EVID. 801(d)(2)(E).

With regard to the claim that the district court erred by failing to make the necessary findings that a conspiracy existed and that Rahamin was part of that conspiracy, the "lack of an explicit finding does not render the district court ruling reversible, however, because 'the necessary threshold determination is implicit in the court's decision to send the case to the jury.'" *United States v. McGlory*, 968 F.2d 309, 334 n.15 (3d Cir. 1992) (quoting *United States v. Ammar*, 714 F.2d 238, 247 (3d Cir.), *cert. denied*, 464 U.S. 936 (1983)). "Accordingly, we must decide whether the record can support such a finding." *Id.* The testimony of the Logatchevs, given before the introduction of the tapes into evidence, appears more than sufficient to find, by a preponderance of the evidence, that a conspiracy existed that involved Rahamin.

Rahamin's second claim of error is that the statements on the tapes were not in furtherance of the alleged conspiracy since Krouse was working as an agent of the government. Even so, we have previously held that "the arrest of a conspirator does not necessarily terminate his or her involvement in the conspiracy." *Ammar*, 714 F.2d at 253 (citation omitted). Therefore, Rahamin's contention that these statements were not in furtherance of the conspiracy solely because Krouse had been arrested and was acting as an informant is incorrect.

Rahamin's third argument is that by the time his name came up on the videotape, the

conversation was no longer in furtherance of the conspiracy and was nothing more than "idle chatter or narrative" by an informer following government instructions to elicit information. We have observed, though, "that the 'in furtherance' requirement of Rule 801(d)(2)(E) is generally given a broad interpretation . . . [Therefore,] statements that provide reassurance, serve to maintain trust and cohesiveness among the coconspirators, or inform each other of the current status of the conspiracy further the ends of the conspiracy." *United States v. De Peri*, 778 F.2d 963, 981-82 (3d Cir. 1985) (internal quotations, alterations, and citations omitted). Thus, the statements on the tapes, a dialogue between two members of the conspiracy, were in furtherance of the conspiracy in that they related to other occurrences in the conspiracy and they constituted general conversation concerning the future of the conspiracy.

Since Rahamin has failed to show that the district court erred in admitting the taped evidence, there is no reason to proceed through the other prongs of plain error analysis.

**4. Right to Testify**

Rahamin also claims that his right to testify on his own behalf was denied at trial when, after the government had completed its cross-examination of Rahamin, the court refused to allow Rahamin to address the jury from the witness stand with no question pending from an attorney. The right to testify on one's own behalf at a criminal trial is undoubtedly a constitutional right. *Rock v. Arkansas*, 483 U.S. 44, 51 (1987). Nonetheless, "[i]n the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt or innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302

(1973). In this case, the district court's refusal to allow Rahamin to lecture from the witness stand after he had already testified at length on both direct and cross examination was not erroneous. Rahamin was not denied his constitutional right to testify.

**5. Evidence of Prior Drug Use**

Rahamin also argues that the district court improperly admitted evidence concerning his personal drug use. Since he failed to object to the admission of this evidence at trial, plain error review is in order. *Gov't of V.I. v. Archibald*, 987 F.2d 180, 184 (3d Cir. 1993) (citations omitted). We have a four-part test for admission of Rule 404(b) evidence: "(1) the evidence must have a proper purpose; (2) it must be relevant; (3) its probative value must outweigh its potential for unfair prejudice; and (4) the court must charge the jury to consider the evidence only for the limited purposes for which it is admitted." *United States v. Cruz*, 326 F.3d 392, 395 (3d Cir. 2003) (citing *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)).

Rahamin argues that reversal is appropriate since the district court failed to conduct the required Rule 403 and 404(b) analyses. Although we ordinarily review the district court's evidentiary rulings surrounding a Rule 404(b) determination for an abuse of discretion, where the district court fails to explain its grounds for denying an objection and its reasons are not otherwise apparent from the record, "we need not defer to the reasoning of the district court, and we may undertake to examine the record and perform the required balancing ourselves." *United States v. Himelwright*, 42 F.3d 777, 781 (3d Cir. 1994). We find no plain error in the use of this evidence.

Rahamin also contends that the district court's failure to issue a limiting instruction

with the Rule 404(b) evidence constitutes automatic grounds for reversal. Although Rahamin cites no authority for this proposition, we will assume that the failure to issue such an instruction constituted plain error. Even under this assumption, the error must have affected Rahamin's "substantial rights." In most cases, this "means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *United States v. Olano,* 507 U.S. 725, 734 (2001) (citations omitted). Rahamin points to eight instances in the record where his drug use is mentioned. Most of these occurrences are nothing more than passing references to Rahamin's drug use during testimony by his confederates concerning the operation of the drug ring and their encounters with Rahamin. Rahamin notes only one instance in the record of any extended dialogue concerning his drug use; however, he fails to point out that this extended dialogue occurred during defense counsel's cross-examination of Lantsberg. In the end, given the relatively minor nature of the testimony concerning Rahamin's drug use, it is highly unlikely that it affected the jury's verdict. Thus, Rahamin has not shown the prejudice necessary for plain error.

**6. Confrontation Clause**

Rahamin's Confrontation Clause claims will be reviewed for plain error since he failed to object to the admission of this evidence at trial. *Adams*, 252 F.3d at 285. "Testimonial" statements from a non-testifying witness may not be introduced against a defendant unless the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). "Testimony" is typically "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 51 (internal quotations and citation omitted).

First, the DEA laboratory report appears to be a testimonial statement since it was offered to prove the weight and substance of the 20,000 confiscated pills. Agents Pritts, a DEA special agent with no apparent laboratory background, was the witness through which this evidence was offered. Because of this, Rahamin claims that he had no opportunity to question the methodology of the lab analysis. Given that no evidence of unavailability or prior questioning by the defense was ever introduced, the introduction of the DEA lab report appears to be a violation of Rahamin's Confrontation Clause rights. Under plain error analysis, an error occurred.

Turning to the third prong of the analysis from *Adams*, 252 F.3d at 285, that the error "affect substantial rights," Rahamin contends that the error was prejudicial because "it was the only evidence of the element of actual drugs for the added substantive count [that the pills were in fact ecstasy], and critical evidence of a conspiracy to distribute such drugs." The DEA report represented evidence of two things: (1) the confiscated pills were ecstasy (2) in the amount of approximately 6139 grams. Since the weight of the drugs was not at issue in either count in the indictment, Rahamin must show prejudice from the DEA report's conclusion that the confiscated pills were ecstasy. However, there was a vast amount of circumstantial evidence that the pills at issue were ecstasy. During the recording of the controlled buy, Krouse implied that the pills were an illegal drug. Further, Oleg Logatchev testified that, while working with police, he "ended up negotiating a deal with [Pylnev] for purchasing *twenty thousand pills of ecstasy* and for those pills to be delivered to Pittsburgh" by Lantsberg to Krouse. Pylnev testified that Logatchev ordered about 20,000 pills from him and he relayed the order to Rahamin who instructed him to speak with Grandpa. Lantsberg

further corroborated the story, stating that he had been arrested "after delivering *twenty thousand ecstasy tablets* to Jeremy Krouse." Overall, there was substantial evidence in the record demonstrating that the tablets were ecstasy. It is highly unlikely that the DEA report confirming this fact prejudiced Rahamin in any meaningful manner. Therefore, Rahamin has failed to show the necessary prejudice to satisfy the requirements of plain error.

Second, Agent Pritts's testimony did not violate the Confrontation Clause because he did not testify to any testimonial statements by Ryan Shank. Instead, Agent Pritts testified to the details of the investigation that ultimately uncovered the drug ring involving Rahamin. The testimony relayed how, after discovering Shank's involvement in ecstasy distribution, the DEA worked to find his suppliers, a step that eventually led them to Logatchev and Krouse. The Confrontation Clause is not implicated by this testimony.

## 7. Agent Pritts's Testimony

Rahamin makes the following objections to Agent Pritts's testimony: (1) he testified falsely as to the date on which a number of these calls occurred; (2) he usurped the jury function by attributing meaning to the phone calls; and (3) he testified about the meaning of these calls based upon evidence not in the record.

### a. False Testimony

First, it is clear that Agent Pritts did testify incorrectly concerning the date of certain phone calls. Both in his testimony and on the communications chart entered into evidence, the date of various phone calls between Rahamin and Pylnev are set on February 4. Instead, these phone calls occurred on February 3. This error is significant because Agent Pritts highlighted that since the calls involving Rahamin occurred the same day as the calls setting

-11-

up the drug deal, this indicated that Rahamin was involved in the drug deal.

Under *Larrison v. United States*, 24 F.2d 82 (7th Cir. 1928), to be entitled to a new trial a defendant must show: "(1) [a] material witness gave false testimony; (2) [w]ithout the false testimony, the jury might have reached a different verdict; and (3) [t]he defendant did not know the testimony was false until after the trial." *United States v. Massac*, 867 F.2d 174, 178 (3d Cir. 1989) (citation omitted). Although we have never adopted this rule, it has been previously used where, as here, both parties agree that the rule should apply. *Id.* Assuming that Agent Pritts qualifies as a material witness, he undoubtedly gave erroneous testimony at trial. As to the second prong, even without the testimony, it is highly unlikely that the jury would have reached a different verdict for two reasons. First, there was overwhelming evidence in the record of Rahamin's guilt. Second, had the telephone record evidence been presented accurately, it would have been highly damaging to Rahamin because it still would support the government's basic assertion: that Rahamin's continual contact with Pylnev in the days leading up to the February 5 drug transaction indicated his involvement in that transaction. Since Rahamin fails the second prong of *Larrison*, an analysis of the third prong is unnecessary.

**b. Usurpation of Jury Role**

As for the usurpation argument, Rahamin takes issue with both Agent Pritts's statement that February 4 "is when everything is starting to happen" and Agent Pritts's characterization of who was speaking on the phone calls. Since he objected to neither of these issues below, we will review only for plain error. *Archibald*, 987 F.2d at 184. Under this standard, Agent Pritts's testimony that "everything is starting to happen," while possibly

an impermissible conclusion by a lay witness, is not an "obvious" or "clear" error. In addition, Rahamin's characterization of Agent Pritts's testimony about what occurred during specific phone conversations is overstated. Although Pritts did use names as shorthand in some instances, the prosecution attempted to clarify by asking, "All you can say from the records is that a call occurred from that phone to that phone? Not who spoke on the phone or what, if anything, was said?" To which Pritts replied, "No. I couldn't answer that." In the end, this does not constitute plain error.

## c. Improper Testimony

Rahamin also asserts that Agent Pritts improperly testified about the contents of controlled phone calls not introduced into evidence. Since Rahamin failed to object to this testimony at trial, we review for plain error. *Archibald*, 987 F.2d at 184. Given the limited nature of this testimony, it was not obvious error for the district court allow this testimony. Furthermore, given that the participants in these conversations testified at trial to the contents of these conversations, the likelihood of prejudice appears minimal. Therefore, Rahamin has failed to show plain error.

## 8. Prosecutorial Misconduct

Rahamin claims multiple errors in the prosecution's summation as well. Since no objection to these errors occurred during trial, "we review for plain error only. In order to demonstrate prosecutorial misconduct under a plain error standard, the review must reveal egregious error or a manifest miscarriage of justice." *United States v. Brown*, 254 F.3d 454, 458 (3d Cir. 2001) (internal quotations and citations omitted).

## a. Vouching

Two criteria must be met to find vouching: "(1) the prosecutor must assure the jury that the testimony of a Government witness is credible; and (2) this assurance is based on either the prosecutor's personal knowledge, or other information not contained in the record." *United States v. Walker*. 155 F.3d 180, 187 (3d Cir. 1998). "[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Young*, 470 U.S. 1, 11 (1985).

Rahamin contends that the prosecution improperly vouched for both its witnesses and its case when during summation it referenced notes of Agent Pritts not contained in the record and specifically noted that Agent Pritts was unlikely to commit a crime by perjuring himself on the stand simply to put away Rahamin. While these remarks were not well chosen, they were specifically in response to comments by the defense during its summation implying that Agent Pritts was fabricating portions of his testimony. In its instruction to the jury, the district court stated:

> You have heard the testimony of law enforcement officials. The fact that a witness may be employed by a law enforcement agency does not mean that his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.

This case is similar to *United States v. Bethancourt*, 65 F.3d 1074 (3d Cir. 1995). There, defense counsel initially questioned the credibility of the government witnesses in his summation and, in response, the prosecution reasoned about the improbability of misbehavior by the government witness. *Id.* at 1079. As in our case, the defense counsel in *Bethancourt*

-14-

made no objection to the comments. *Id.* Ultimately, the court held, "In light of the overwhelming evidence against the defendant and the instructions of the trial judge to the jurors that they were the sole judges of credibility of all witnesses and that the government's witnesses' testimony was not entitled to any greater consideration because of their federal employment, the prosecutor's two isolated comments were harmless and did not contribute to a miscarriage of justice." *Id.* at 1080.

Based upon *Bethancourt*, the comments by the prosecution in its rebuttal summation likewise do not constitute plain error given their limited nature, invited response, the instructions of the district court, and the overwhelming evidence of guilt.

Regarding Rahamin's other vouching claim, that certain remarks by the prosecution during opening summation improperly informed the jury that a conspiracy undoubtedly existed, this claim also fails. First, Rahamin cannot show one of the two necessary requirements for proving improper prosecutorial vouching: that the prosecution vouched for the credibility of a witness. *Walker*, 155 F.3d at 187. Second, any "usurpation of the jury" argument is unpersuasive considering that Rahamin conceded the same statement in both his opening and closing arguments.

**b.  Rahamin's Prior Drug Use**

Rahamin also claims that the reference to his prior drug use during the prosecution's summation is grounds for reversal. This issue has been dealt with previously. As noted above, these references to his prior drug use did not constitute plain error given the insignificant nature of the passing remarks.

**c. Usurpation of Jury Role**

Rahamin's challenge to the portion of the prosecutor's summation referencing the phone record evidence misses the mark because, although the summation remarks are based upon Agent Pritts's erroneous testimony, the prosecutor's statement was a correct rendition of the evidence. As discussed above, the phone records showed that Pylnev and Rahamin were in contact with one another two days prior to February 5, just as the prosecution alleges. Furthermore, given the in-depth testimony of the various co-conspirators about the telephone conversations involved with the sting, this was a permissible reading of the evidence. Lastly, as discussed above, the error that did occur in presenting this erroneous testimony to the jury did not entitle the defendant to a new trial.

## 9. Ineffective Assistance of Counsel

"It has long been the practice of this court to defer the issue of ineffectiveness of trial counsel to a collateral attack." *United States v. Thornton*, 327 F.3d 268, 271 (3d Cir. 2003) (citation omitted). The one "narrow exception" to this rule is that an inquiry into ineffective assistance is allowed "when the record is sufficient to allow determination of the issue." *Id.* (citation omitted). The record is not complete for us to consider that issue now, so we decline to rule on it. Accordingly, Rahamin's claims of ineffective assistance of counsel should be denied without prejudice to his right to raise this claim on a collateral attack brought pursuant to 28 U.S.C. § 2255. *See id.* at 272.

## 10. Jury Instructions

Rahamin next challenges the sufficiency of the district court's jury charge. Since he failed to raise this argument below, we review for plain error. *Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 424 F.3d 336, 339 (3d Cir. 2005).

As to Rahamin's first claim of error, as discussed previously, the evidence of his prior drug use did not constitute plain error since that evidence did not prejudice his case. The lack of an accompanying jury instruction does not change this analysis. Second, regarding Rahamin's objection to the prosecution's charts, where a chart acts as a summary for "testimony that had been introduced into evidence" and "the defendant did not object to the introduction of this evidence," any challenge under the plain error standard must be rejected. *United States v. Velasquez*, 304 F.3d 237, 240 (3d Cir. 2002). Although Rahamin does object on appeal to portions of the testimony of Agent Pritts (concerning the correct dates of certain phone calls), there is no indication why the charts should be considered prejudicial when the evidence upon which the chart is based was not so considered.

Lastly, Rahamin argues that by allowing the jury to begin deliberations shortly before a long Easter weekend and informing it that if a verdict was not reached it would be required to return on Monday, the district court exerted "improper pressure on the jury to return a quick verdict." A plain error analysis is again in order since Rahamin did not object at trial. Matters regarding jury deliberations are left to the discretion of the trial judge and there is no indication that the district court abused that discretion here. *See Gov't of V.I. v. Gereau*, 502 F.2d 914, 935 (3d Cir. 1974) (citations omitted).

**11. Admission Into Evidence of Co-Conspirator's Convictions**

Rahamin also contends that the district court improperly admitted testimony regarding the convictions of his co-conspirators. Since there was no objection below, we review for plain error. *Adams*, 252 F.3d at 285.

First, we have previously held that evidence of co-conspirator's convictions often

bears on the credibility of the co-conspirator witness. *United States v. Univ. Rehab. Servs. (PA), Inc.*, 205 F.3d 657, 665 (3d Cir. 2000). Apart from the district court's failure to conduct a Rule 403 balancing inquiry, Rahamin puts forward no reasons why this evidence was especially prejudicial in this case. Since, under plain error review, an appellant is required to show prejudice as well as plain error, Rahamin has failed to make this showing. *Adams*, 252 F.3d at 285.

Moreover, any prejudicial effect from admitting this evidence "is typically cured through a curative instruction to the jury." *Univ. Rehab. Servs. (PA), Inc.*, 205 F.3d at 668. Even assuming arguendo that the charge given by the court on this issue was in error, the slight deviation from the instruction of *Universal Rehabilitation Services* would not constitute plain error.

**12. Sufficiency of Evidence**

Rahamin also contends that there is insufficient evidence to support his conviction. Although he claims the evidence was insufficient "as to each count," Rahamin makes three specific arguments to wit, that no evidence showed that he: (1) ever physically possessed ecstasy; (2) was a participant in any of the recorded calls; or (3) was a direct participant in the controlled delivery. "Our review of the sufficiency of the evidence after a conviction is 'highly deferential.' We must determine whether the evidence submitted at trial, 'when viewed in the light most favorable to the government, would allow a rational trier of fact to convict.'" *United States v. Hart*, 273 F.3d 363, 371 (3d Cir. 2001) (citations omitted).

All three of these arguments can quickly be disposed of by looking solely to the testimony of one witness, Pylnev. He testified: (1) he called Rahamin, as was the ordinary

procedure, to set up the 20,000 ecstasy pill deal that occurred on February 5; (2) Rahamin okayed the deal, thereby demonstrating "constructive possession"; and (3) upon Rahamin's instructions, he began making the usual arrangements for a delivery. Overall, there was sufficient evidence to sustain the conviction.

**13. *Booker***

Lastly, Rahamin was sentenced prior to *Booker* under a mandatory Guidelines regime. The government concedes that based upon *United States v. Davis*, 407 F.3d 162 (3d Cir. 2005), Rahamin's case is appropriate for a remand for re-sentencing in accordance with *Booker*. Because of this court's stated preference for resentencing cases occurring pre-*Booker*, a remand for resentencing is appropriate.

**CONCLUSION**

Accordingly, Rahamin's conviction is AFFIRMED, with his ineffective assistance of counsel claim DENIED WITHOUT PREJUDICE so that it may be pursued upon collateral attack under 28 U.S.C. § 2255. His sentence is VACATED and the case REMANDED for resentencing.