**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1010
_____

JAMES E. HEALY,
Appellant

v.

HAVERFORD TOWNSHIP; HAVERFORD TOWNSHIP POLICE OFFICER
WILLIAM SHIELDS BADGE #2165, individually and as a police officer for Haverford
Township
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 09-02982)
District Judge: Hon. Eduardo C. Robreno

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 6, 2012

Before: SLOVITER, VANASKIE, and GARTH, <u>Circuit Judges</u>.

(Filed February 22, 2012)
_____

OPINION
_____

GARTH, <u>Circuit Judge</u>.

James Healy appeals from a jury verdict in favor of Haverford Police Officer

William Shields after Healy brought a 42 U.S.C. § 1983 action alleging use of excessive

force.

Healy contends that the trial court improperly allowed the admission of certain evidence at the trial. For the reasons that follow, we will affirm the December 3, 2010 judgment of the District Court against Healy.

I.

We write principally for the benefit of the parties and recite only the facts essential to our disposition.

On July 6, 2007, Officer Shields was on patrol when he saw Healy operating a motor vehicle in Haverford Township. Shields knew Healy from prior arrests for driving under the influence, and was aware that as of July 6, Healy's license was suspended as a result of prior offenses related to driving under the influence. Shields activated his overhead lights and siren to direct Healy to pull to the side of the road. Healy pulled into a parking lot two blocks from the point where the lights were activated, exited his car, and approached Shields' car. Shields exited his own vehicle, and an altercation between the two men followed. Shortly into the altercation, Shields placed Healy under arrest. As he walked Healy to the front of Shields' vehicle and instructed him to place his hands on the hood of the vehicle, Shields believed that Healy was resistant and began to ball up a fist. At that time, Shields used his taser on Healy and successfully took him into custody.

Thereafter, Shields drove Healy to a hospital where he ordered a blood test to determine Healy's blood alcohol level. The blood test revealed no alcohol in Healy's system, but did reveal the presence of marijuana. Healy was subsequently charged with driving under the influence, driving while under suspension, and resisting arrest. He pled guilty to the first two charges and Nolo Contendere to the resisting arrest charge. Healy

2

thereafter filed a § 1983 action against Haverford Township and Shields, seeking compensatory damages, punitive damages, and other relief on the grounds that Shields used unreasonable force during the arrest. Healy thereafter agreed to dismissal of Haverford Township as a defendant. Prior to trial on the § 1983 action, Healy filed motions in limine seeking the preclusion of: 1) evidence that, prior to the incident which gave rise to the action, he had been stopped and arrested for driving under the influence and related offenses; and 2) evidence relating to the time between Healy's arrest and his blood test and evidence that Healy's blood reflected the presence of marijuana in his system. The District Court ruled that the evidence pertaining to Healy's blood test would be admissible at trial, but that evidence of his prior driving under the influence offenses would not.

At trial, following cross-examination of Shields and testimony from Healy pertaining to prior encounters between the two, the District Court ruled, over Healy's objection, that Shields could introduce evidence of prior contact between the two parties that had led to convictions of Healy. At the conclusion of trial, the jury returned a verdict in favor of Shields. Healy timely appealed.

## II.

The District Court had jurisdiction over Healy's action pursuant to 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. "We review a trial court's decision to admit or exclude evidence for abuse of discretion." U.S. v. Starnes, 583 F.3d 196, 213-14 (3d Cir. 2009).

## III.

3

On appeal, Healy contends that: 1) the District Court improperly permitted testimony by Shields that he stopped Healy because he "knew he had a DUI [driving under the influence] suspended license; and 2) the District Court improperly permitted the introduction of video of Healy during his transportation to the hospital and the introduction of recordings of events once Healy and Shields arrived at the hospital. We will address these contentions in turn.

Healy first claims that evidence of his prior history of driving under the influence was improperly admitted because it was not relevant evidence under Federal Rules of Evidence 401 and 402. In the alternative, Healy argues that if the evidence was relevant, its introduction would be unduly prejudicial under Federal Rule of Evidence 403. Shields contends that the doctrine of curative admissibility allowed for the admission of this evidence in spite of any potential problems under the Federal Rules.

"The doctrine of 'opening the door,' sometimes referred to as 'curative admissibility,' provides that when one party introduces inadmissible evidence, the opposing party thereafter may introduce inadmissible evidence to rebut or explain the prior evidence." Government of Virgin Islands v. Archibald, 987 F.2d 180, 187 (3d Cir. 1993). In the present case, Healy's counsel cross-examined Shields about prior interactions between Shields and Healy, including prior interactions that had resulted in arrests and convictions for driving under the influence. On direct examination, Healy also testified about his prior contact with Shields, including testimony about arrests. All of this evidence was inadmissible under the District Court's pre-trial ruling on Healy's

4

motion in limine. There is no question, therefore, that Healy opened the door by introducing inadmissible evidence of this nature.

In addition to eliciting and introducing evidence of these prior arrests, Healy's counsel attempted to suggest that Shields was motivated by a history of personal dislike for Healy. In order to rebut the suggestion that he was personally biased towards Healy, as suggested by the otherwise inadmissible evidence that Shields had arrested Healy on previous occasions, Shields sought to prove that the arrests had been legitimate: specifically, to indicate that at least some of those prior arrests had ended in convictions for driving under the influence. Once Healy opened the door and introduced inadmissible evidence of the history between the two parties and attempted to explain that history in a manner unfavorable to Shields, it was within the District Court's discretion to allow Shields to introduce otherwise inadmissible evidence to rebut that explanation.

Healy next claims that the District Court abused its discretion when it allowed the introduction of a video recording of Healy from the time he was arrested until he and Shields arrived at the hospital for the administration of his blood test, and when it allowed the introduction of an audio recording of the interaction between Shields, Healy, and technicians at the hospital.

Healy briefly argues that admission of the video of him during transport to the hospital was irrelevant to any element of the trial. Insofar as the video, by Healy's own description, "simply showed [Healy] calmly sitting in the back of the patrol vehicle doing nothing and saying nothing," it was relevant to Healy's claim of unnecessary force. Healy's demeanor, lack of indications of injury, and lack of requests for medical

5

treatment all bear directly on both the extent of the force used against him and his credibility. The video recording was therefore relevant, and the District Court did not abuse its discretion in allowing Shields to introduce it at trial.

Healy next claims that the District Court erred in allowing the introduction of an audio recording of his blood test. Healy does not articulate any reason for or otherwise explain this claim, other than to say "the prejudice far outweighs any probative value. There are several hearsay statements made by unknown technicians." Having reviewed the entire recording entered into evidence by Shields, we are unable to conclude that any portion of the recording after Healy was taken into custody is in any way prejudicial. Nevertheless, the recording does serve as evidence of Healy's state of mind and his injuries or lack thereof; as such, it was both relevant and probative evidence. Accordingly, it was not an abuse of discretion to admit that portion of the recording.

Finally, Healy claims that the District Court erroneously allowed Shields to introduce evidence that Healy's blood test indicated the presence of marijuana in his bloodstream. Healy contends that the introduction of that evidence was designed "solely to attack Mr. Healy's character." Shields argues that the presence of marijuana in Healy's blood would clearly impair his ability to accurately recall the events surrounding his arrest. Because the exact nature and sequence of those events was in dispute at the trial, the veracity and accuracy of Healy's recollection would have been significant, and the presence of marijuana in his blood therefore served a purpose other than a character attack on Healy. The trial court did not abuse its discretion in allowing the admission of evidence of the presence of marijuana in Healy's blood at the time of his arrest.

IV.

Because we conclude that the District Court did not abuse its discretion in allowing the introduction of evidence of Healy's prior driving under the influence conviction, or of the circumstances surrounding his blood test, we will affirm the judgment of the District Court.